In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-3978

KEITH MILLER,

*Petitioner-Appellant,*

*v.*

WALTER E. MARTIN,[Œ]

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:04-CV-028-TS—**Theresa L. Springmann**, *Judge.*

---

ARGUED JANUARY 24, 2007—DECIDED MARCH 15, 2007

---

Before RIPPLE, ROVNER, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Indiana prisoner Keith Miller, who is 71 years old, is serving a 48-year sentence for his convictions on 18 counts of state securities violations. Miller, who was convicted *in absentia* after failing to appear for trial, attended his sentencing hearing but remained silent throughout the proceedings on the advice of his attorney, Kevin McShane. McShane likewise refused to participate. After his convictions and sentence were up-

---

[Œ] Walter E. Martin, the current superintendent of the Miami Correctional Facility, has been substituted for John R. VanNatta as respondent. *See* Fed. R. App. P. 43(c).

held on appeal, Miller successfully petitioned for postconviction relief and was granted resentencing, but the Indiana Court of Appeals reversed that decision. Miller then filed a petition for a writ of *habeas corpus* in federal court, which was denied. On appeal Miller argues that the state appellate court unreasonably concluded that McShane's performance at sentencing was not deficient or prejudicial, and he further contends that *United States v. Cronic*, 466 U.S. 648 (1984), rather than *Strickland v. Washington*, 466 U.S. 668 (1984), governs his claim. We conclude that *Cronic* is indeed the proper framework, but that, regardless of which standard we apply, Miller meets his burden. Accordingly, for the reasons set forth in the following opinion, we reverse the district court's decision and remand with instructions to grant the writ of *habeas corpus*.

## I.

The State of Indiana charged Miller with six counts each of selling unregistered securities, failing to register as an agent, and securities fraud, after he and a business associate sold shares in a company they formed without making necessary disclosures to the investors. Miller did not appear for the trial scheduled for November 14, 1988. After satisfying himself that Miller had received notice of the trial date but deliberately absented himself, the trial judge decided to try Miller *in absentia*. The jury found Miller guilty on all counts.

Miller was apprehended shortly after the trial. He retained new counsel, McShane, and appeared for his sentencing hearing on June 9, 1989. According to Miller's later testimony, at the time of the hearing, he had not yet seen a copy of his presentence investigation report ("PSR") or had the opportunity to review it with McShane. McShane was certain that the appellate court would order

a new trial because, he believed, the trial *in absentia* was "a nullity." He therefore told Miller not to speak at all during the sentencing hearing, lest he reveal that he had notice of his trial date. For his own part, McShane also remained mute, except to tell the sentencing court at the outset of the hearing that Miller "does not recognize" the validity of the trial or the "authority of the Court to proceed to disposition at this time." The State argued for double the presumptive sentence of four years' imprisonment on each count based on aggravating factors. McShane, as he testified during the state postconviction hearing, "did not make any sort of presentation or resist the State's presentation." The court imposed a sentence of eight years on each count of conviction, with the sentences on six counts to run consecutively and the remaining 12 to run concurrently.

McShane's prediction that Miller's convictions would surely be overturned on appeal proved wrong. The appellate court did, however, order a limited remand for a hearing on whether Miller had knowingly absented himself from trial (a necessary precondition to a trial *in absentia*). On remand, the trial court conducted a hearing and again concluded that Miller had knowingly failed to appear. The appellate court upheld this finding and therefore rejected Miller's argument that the trial *in absentia* was improper. *Miller v. State*, 593 N.E.2d 1247 (Ind. Ct. App. 1992). The court affirmed the convictions and sentence, and shortly thereafter the Indiana Supreme Court denied Miller's petition for discretionary review.

On May 8, 1995, Miller filed a petition for postconviction relief in which he advanced nine grounds for relief, including the argument that McShane provided ineffective assistance of counsel at sentencing. More than six years later—the reasons for this unconscionable delay are not clear from the record—a hearing was finally held,

and both Miller and McShane testified. Miller testified that his PSR contained numerous errors, most relating to the facts of his offense, that went uncorrected at the sentencing hearing.[1] When asked if he made any presentation to the sentencing court, McShane stated, "None whatsoever, other than to advise the Court that we would not be making a presentation." He explained that at the time of sentencing, it was his "firm opinion" that a new trial would be ordered on appeal, and he did not want Miller to be questioned about whether he had actual notice of his trial date. When asked specifically if he had cross-examined witnesses, commented on exhibits, or otherwise participated, he stated that he "did nothing." Ultimately, the court concluded that Miller had to be resentenced because he was denied the effective assistance of counsel at his sentencing hearing. Finding that McShane "did not present any mitigating evidence," did not rebut any evidence presented by the State, and did not correct "material factual errors" in the PSR, the court concluded that McShane's performance rendered the proceedings "fundamentally unfair."

The State appealed, and the Indiana Court of Appeals reversed. *State v. Miller*, 771 N.E.2d 1284 (Ind. Ct. App.

---

[1] For example, Miller disputes the statements in his PSR that he had 13 prior arrests; that he had been involved in similar business deals in Wisconsin, Nevada, and California; that he sold unregistered securities to "at least fifteen" Indiana residents; and that he was involved with a corporation named "Lion's Head, Inc.," which was subject to a cease-and-desist order from the Indiana Securities Division. His testimony at the postconviction hearing is the only evidence in the record that the PSR contained errors. Although the State argues that Miller's self-serving statements do not establish that the PSR contained any errors, it points to nothing in the record to contradict that testimony.

2002). Applying *Strickland*, the appellate court noted that McShane's choice to stand mute, while "unorthodox," was a clear-cut example of a "purely strategic decision" that was not unreasonable based on prevailing professional norms. *See id.* at 1288-89. The court also concluded that Miller could not establish that McShane's decision prejudiced him. Focusing only on Miller's claim that errors in the PSR went unchallenged, the court concluded that Miller had not established that correcting those errors would have changed the sentence. *Id.* at 1289. The court reasoned that the length of Miller's sentence was due almost entirely to his criminal history, which no amount of participation by McShane could have changed. *Id.*

After the Indiana Supreme Court denied transfer, Miller filed a petition under 28 U.S.C. § 2254 in federal district court. Miller raised several claims, but the only one relevant to this appeal is his argument that the Indiana Court of Appeals acted contrary to clearly established law in concluding that counsel provided constitutionally sufficient representation at sentencing. The district court concluded that the state appellate court's decision was reasonable and denied Miller's petition and his subsequent request for a certificate of appealability. Miller filed a notice of appeal, and we granted a certificate of appealability on the ineffective-assistance claim.

## II.

We review the district court's denial of a *habeas corpus* petition *de novo. See Montgomery v. Uchtman*, 426 F.3d 905, 909-10 (7th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may not grant a writ of *habeas corpus* on any claim adjudicated on its merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Miller first argues that the state appellate court improperly applied *Strickland* rather than *Cronic* to his ineffective-assistance claim. Counsel's failure to participate in the sentencing hearing was so complete that, according to Miller, prejudice should have been presumed. If Miller is correct that the state appellate court applied the wrong legal standard to his ineffective-assistance claim, then the resulting decision is contrary to Supreme Court precedent. *See Van Patten v. Deppisch*, 434 F.3d 1038, 1043 (7th Cir. 2006).

Some uncertainty exists with regard to the appropriate standard for evaluating claims of ineffective assistance of counsel when counsel's efforts appear particularly lacking. Ordinarily, ineffective-assistance claims are governed by the two-part inquiry articulated in *Strickland*. To prevail, the defendant must demonstrate that counsel's performance was so deficient that it fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88; *Montgomery*, 426 F.3d at 913. He must also establish that he was prejudiced by the deficient performance, *i.e.*, that but for counsel's errors there is a reasonable probability that the outcome would have been different. *See Strickland,* 466 U.S. at 694. However, in certain types of cases, prejudice is "so likely that case-by-case inquiry into prejudice is not worth the cost," and so it is presumed. *Id*. at 692. This occurs when (1) the defendant "is denied counsel at a critical stage"; (2) counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; or (3) counsel is called upon to represent a client in circumstances under which no lawyer could provide effective assistance. *Cronic*, 466 U.S. at 659-61.

Miller argues that the second *Cronic* exception applies to his case. Indeed, we have held that the effective aban-

donment of a defendant at sentencing calls for the application of *Cronic*. *Patrasso v. Nelson*, 121 F.3d 297, 304 (7th Cir. 1997). In that case, the lawyer for a defendant convicted of aggravated battery and attempted murder did not respond to the State's presentation of aggravating factors at sentencing. We held that the attorney, who "entirely failed to represent his client," did not act in an objectively reasonable manner because he was obligated to try to mitigate his client's punishment. *See id.* at 303-04. The performance was "so lacking" that we presumed it to have prejudiced the defendant. *See id.* at 304.

Our analysis cannot end with *Patrasso*, however, because intervening cases have emphasized that the second *Cronic* exception is "exceedingly narrow." *See United States v. Theodore*, 468 F.3d 52, 56 (1st Cir. 2006). For it to apply, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685 (2002). In *Bell*, another case addressing an attorney's responsibilities at sentencing, the petitioner faulted counsel for failing to adduce any mitigating evidence or make a closing argument at his sentencing hearing. The Court declined to apply *Cronic*, concluding that the errors were "of the same ilk as other attorney errors we have held subject to *Strickland*'s performance and prejudice components." *Id.* at 697-98. In the wake of *Bell*, courts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice. *See Theodore*, 468 F.3d at 57 (explaining that *Cronic* did not apply where attorney's errors were not "tantamount to non-representation"); *United States v. White*, 341 F.3d 673, 679 (8th Cir. 2003) (*Cronic* did not apply unless "counsel completely failed to participate in the proceedings"); *see also Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998) (*Cronic* applies when counsel was "not merely incompetent but inert").

In this case, McShane's advocacy at sentencing was so non-existent as to fall within even a very narrow exception. Other than orally moving for a new trial and explaining several times that neither he nor Miller would participate in the proceedings, McShane said nothing throughout the sentencing hearing. By his own admission, he did not offer a shred of mitigating evidence, object to (or consult with his client about) errors in the PSR, or even lobby for a sentence lower than the one urged by the State. In his own words, he "did nothing." McShane's performance was therefore even more lacking than that of the attorney in *Bell*, who made a brief opening statement asking for mercy, cross-examined a witness for the State, highlighted his client's distinguished military service, and objected to the introduction of photographs of the victims. *Bell*, 535 U.S. at 708; *see Theodore*, 468 F.3d at 56-57.

Although the State insists that McShane's failure to participate was "strategic" and all but unreviewable, no discernable strategy was at work here. McShane explained why he instructed *Miller* to remain silent—to prevent the judge from learning that Miller was aware of his trial date—but McShane never explained his own silence. He gave no indication that he had reason to believe the court would force him to testify against his own client by revealing what Miller knew. In any event, McShane could have declined to discuss the trial but still commented on issues relating to the sentence. To hold that "strategy" justified McShane's decision would be to make a mockery of the word. If McShane feared that making a presentation at sentencing could somehow prejudice the appeal—which is not the reason he gave the sentencing court for his decision—he was wrong, *see, e.g.*, *McCaffrey v. Indiana*, 577 N.E.2d 617 (Ind. App. 1991), but, more critically, he does not appear to have conducted any research or consulted the court about his concerns. We fail to see any way that his silence could have improved his client's position

at sentencing. We need not speculate, however, because as we have already stated, McShane never offered a strategic justification for his own silence. Thus, the Indiana Court of Appeals unreasonably concluded that strategy justified McShane's refusal to participate. McShane's total dereliction at sentencing "invites application of *Cronic* rather than *Strickland*," and prejudice may be presumed. *Patrasso*, 121 F.3d at 304.

We note, however, that the requirement of proving prejudice would present no impediment to Miller's case, as he satisfies both prongs of the *Strickland* test. We need not belabor the point with respect to McShane's deficient performance, and as Miller contends, the Indiana Court of Appeals also unreasonably concluded that McShane's silence was not prejudicial. Focusing almost exclusively on the errors in the PSR that McShane failed to point out, the court concluded that, because of Miller's criminal history, the sentence would have been no different had the errors been brought to the court's attention. This conclusion is strange because some of the errors Miller has identified in his PSR concern his criminal record. Moreover, the court did not address any of the other ways in which Miller argued that McShane's silence prejudiced him. Miller points out, for example, that the State's presentation of aggravating factors went wholly unchallenged. And McShane did not present, or even research, any mitigating factors, such as Miller's assertion that he had already paid restitution to some victims. Before imposing the sentence, the trial judge stated specifically that he "[could not] find any mitigating factors," which leads us to conclude that the lopsidedness of the presentations was as evident at the time as it appears from the cold record. McShane knew that the court was contemplating the maximum sentence, but he advanced no argument to challenge the appropriateness of such a sentence for a non-violent offender who defrauded

investors of an amount less than $30,000. Nor did he see fit to argue against the imposition of consecutive sentences. Under these circumstances, Miller could certainly show that there is a "reasonable probability" that the outcome of the proceedings was affected by McShane's performance.

Finally, we are compelled to express our concern with the advocacy on behalf of the State in this matter. We are hard-pressed to recall so pronounced a dereliction of duty on the part of an attorney as occurred at Miller's sentencing hearing. Of course, we do not suggest that the State should have conceded its case, but, where so great a lapse occurs, it would behoove the State to acknowledge the gravity of the circumstances and address the shortcomings in its case. Instead, regrettably, both in the briefs and at oral argument, we experienced only an intractable effort to rationalize at any cost the constitutional violation that took place.

### III.

The Indiana Court of Appeals unreasonably applied federal law in concluding that McShane's decision to stand mute at Miller's sentencing hearing did not amount to ineffective assistance of counsel. McShane's total abandonment of his client warrants the application of *Cronic*, and we presume that the non-participation prejudiced Miller's position at sentencing. Moreover, we would reach the same result even if we found it necessary for Miller to establish prejudice. Accordingly, we REVERSE the denial of Miller's petition and REMAND the case to the district court with instructions to grant the writ of *habeas corpus* to the extent that Miller must be resentenced with the assistance of counsel.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*