In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2971

CLEOPHUS AMERSON,

*Petitioner-Appellant,*

*v.*

CATHERINE J. FARREY, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 271—**Lynn Adelman**, *Judge.*

ARGUED MAY 24, 2007—DECIDED JULY 5, 2007

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Cleophus Amerson was convicted in the Milwaukee County Circuit Court of two counts of first-degree sexual assault of a child and was sentenced to twenty years' imprisonment. He argues that his trial counsel was ineffective because the counsel failed to investigate a prior assault of the victim and failed to procure a rebuttal witness during the trial. The district court denied Amerson's petition for a writ of habeas corpus under 28 U.S.C. § 2254 and we affirm.

## I. HISTORY

In December 1993, Amerson and Denise M. were dating. Denise was the mother of then nine-year-old Tawanda. Denise testified at trial that on the evening of December 20, 1993, Tawanda and Amerson walked to a local store. Tawanda returned home by herself a few minutes ahead of Amerson. Denise testified that Tawanda looked scared and hurt. Denise asked Tawanda what was wrong but before Tawanda could answer Amerson returned home. Denise then stopped questioning Tawanda and waited for Amerson to leave the home. She then took Tawanda into the bathroom. Apparently, Amerson's six-year-old nephew, Robert Amerson, was also in the home and Denise wanted to question Tawanda in private.

Once in the bathroom, Denise again asked Tawanda what was wrong. According to Denise, Tawanda was afraid to tell her what was wrong. Denise then inspected Tawanda's vaginal area and discovered that Tawanda's vagina was red and swollen. Denise also witnessed white fluid on Tawanda and the fluid smelled like semen. Denise then hugged Tawanda and told her that everything would be all right. Tawanda then told Denise that Amerson touched her and hurt her. Denise and Tawanda both cried during this conversation.

Amerson returned to the home approximately fifteen minutes later. Denise confronted Amerson with the allegation and he denied having sexual contact with Tawanda. Denise and Amerson then got into a physical fight and Denise pulled a knife on Amerson. Amerson overpowered Denise and took the knife from her. Denise's son then called the police and Amerson left the home.

Police Officer Ivory Britton arrived at the home in response to the call. Denise told Officer Britton that Amerson had raped Tawanda. Officer Britton interviewed Tawanda outside of Denise's presence. Officer Britton

testified at trial that during this interview Tawanda seemed terrified and kept ducking her head down while she was talking. Tawanda described penis-to-vagina intercourse to Officer Britton and said that Amerson had done this to her. Tawanda also described a second penis-to-vagina incident involving Amerson that had occurred in August 1993. Tawanda informed Officer Britton that she had been too scared to tell anyone about the August 1993 incident.

Tawanda was then taken to the hospital where she was interviewed by Detective Stawicki. Tawanda repeated her allegations about the prior and current assaults to Detective Stawicki. She said that the August 1993 assault occurred inside a burned out and abandoned house. The current assault occurred earlier that evening in a parking lot. Detective Stawicki then took Tawanda and Denise to the Warner Cable parking lot where Tawanda said that the assault had occurred. Tawanda pointed out an opening in the fence surrounding the lot through which she and Amerson entered the parking lot. Tawanda then led Detective Stawicki to a spot in the parking lot between two trucks where she said the current assault had occurred.

Tawanda was then returned to the hospital and examined by Dr. Ellen Klandrud. Dr. Klandrud testified that she examined Tawanda and discovered that Tawanda's hymen was red and swollen leading Dr. Klandrud to conclude that Tawanda had suffered recent trauma. Dr. Klandrud also discovered two healed tears to Tawanda's hymenal ring and this lead Dr. Klandrud to conclude that Tawanda had also experienced prior trauma. Tawanda also recounted the allegations as to the August 1993 and December 1993 assaults by Amerson to Dr. Klandrud.

After trial and through the state direct appeal and post-conviction review process, Amerson sought to present new evidence that was not presented during his trial.

Amerson argued that Tawanda had recanted her allega-tions and suggested that Denise had pressured Tawanda into making the allegations for Denise's own personal reasons. However, a state social worker suggested that the family had pressured Tawanda into recanting her allegations and thus questioned whether the recantation was reliable.

Amerson also sought to present evidence about whether Robert Amerson might have heard Denise and Tawanda's initial conversation in the bathroom. Amerson suggested that Robert could testify that Tawanda had originally said that nothing was wrong and only began to make the allegations against Amerson after Denise had threatened to whip Tawanda with a belt. Robert was originally scheduled to testify during the trial and appeared at court during the first day of trial. However, Robert did not return for the second day and ultimately did not testify. Amerson's counsel relied on Robert's family to get him to court to testify. Amerson's attorney apparently made a handful of phone calls to see where Robert was when he did not appear to testify but otherwise did not take any other actions to insure his appearance at trial.

Finally, Amerson argues that his trial counsel also failed to investigate and present evidence at trial about a prior sexual assault that Tawanda suffered in Chicago in 1987. According to Amerson, his counsel failed to obtain medical records from Mount Sinai Hospital about the assault. The theory is that these records would have explained Tawanda's prior injuries and would also have provided an alternate explanation for her sexual knowledge.

## II.  ANALYSIS

For purposes of habeas review in federal court, Amerson claims that he has suffered from ineffective assistance of

trial counsel in violation of his Sixth Amendment rights. We must determine whether Amerson's trial counsel was ineffective due to his failure to (1) procure Robert's testimony during the trial, and (2) investigate the prior assault in Chicago from 1987.

"We review the district court's denial of a *habeas corpus* petition *de novo*." *Miller v. Martin*, 481 F.3d 468, 472 (7th Cir. 2007) (per curium) (citing *Montgomery v. Uchtman*, 426 F.3d 905, 909-10 (7th Cir. 2005)). "[A] federal court may issue a writ of habeas corpus only if the state court reached a decision that was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court." *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000)).

"A petitioner asserting an ineffective assistance of counsel claim under *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense." *Goodman v. Bertrand*, 467 F.3d 1022, 1027 (7th Cir. 2006). In terms of prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Raygoza*, 474 F.3d at 963 (quoting *Strickland*, 466 U.S. at 694).

Amerson cannot demonstrate prejudice and therefore we need not determine whether his trial counsel's performance was deficient. *Strickland*, 466 U.S. at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ."); *see also United States v. Birk*, 453 F.3d 893, 898-99 (7th Cir. 2006). A key fact

demonstrating the absence of prejudice is Dr. Klandrud's medical examination of Tawanda. This examination discovered evidence demonstrating that Tawanda had recently experienced sexual trauma. The issue of whether Denise tried to coach or threaten Tawanda to accuse Amerson does not explain away the medical evidence.

Additionally, any testimony from Robert would do nothing to refute the medical evidence. The reality of this case is that there is clear evidence that Tawanda suffered an assault in December 1993. Robert's testimony would have added little to the defense. At best, he would testify that Tawanda was reluctant to acknowledge that anything was wrong and that she made the allegations after Denise threatened her. There is no evidence that Denise encouraged Tawanda to name Amerson, or that Denise otherwise told Tawanda what to say. The medical evidence was consistent with Tawanda's statement as to what happened. Because Robert's testimony was directed at whether anything at all happened to Tawanda (a theory inconsistent with the medical evidence), as opposed to the identification of the responsible party, his testimony was of particularly limited usefulness, and the failure to procure it was not prejudicial.

In his reply brief, Amerson argues that Tawanda and her brother had intercourse during the weeks leading up to the December 1993 assault and this could explain the redness in her genitalia reported by Dr. Klandrud. Arguments raised for the first time in a reply brief are waived. *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006). Should we choose to reach the merits of this issue, we would conclude that the argument about sexual contact with the brother would also fail. This claim is part of the larger argument that Amerson developed after Denise and Tawanda recanted their allegations against Amerson after the trial. However, the state court found that this recantation was questionable and Amerson had

failed to provide sufficient evidence to cast doubt on the original statements and trial testimony of Tawanda, Denise, the responding police officer and detective who interviewed Tawanda, and the doctor who examined Tawanda in December 1993. Under habeas review, "state court factual findings are presumed correct. A habeas petitioner bears the burden of rebutting that presumption by clear and convincing evidence." *Williams v. Bartow*, 481 F.3d 492, 498 (7th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)). The state court was presented with an issue on collateral review of whether to credit the original statements and the trial testimony or the later recantations. The state court decided to credit the original statements and trial testimony and Amerson has failed to give us a reason to disregard this decision.

As for the 1987 assault in Chicago and the accompanying medical record from Mount Sinai Hospital, trial counsel's failure to obtain this evidence and investigate this incident did not prejudice Amerson. The medical records from the 1987 assault reveal other injuries to Tawanda different from those identified in the December 1993 examination and specifically do not mention the two healed tears to Tawanda's hymenal ring discovered by Dr. Klandrud. Consequently, the 1987 medical records would be of no use to Amerson in explaining the injuries discovered in the December 1993 examination by Dr. Klandrud.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*