RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DONALD R. PHILLIPS,

        *Petitioner-Appellant,*

    *v.*

RANDY L. WHITE, Warden,

        *Respondent-Appellee.*

No. 15-5629

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:08-cv-00368—Gregory F. Van Tatenhove, District Judge.

Argued: February 1, 2017

Decided and Filed: March 15, 2017

Before: COLE, Chief Judge; COOK and WHITE, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Robert Stander, JONES DAY, Washington, D.C., for Appellant. Todd D. Ferguson, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Robert Stander, JONES DAY, Washington, D.C., for Appellant. Todd D. Ferguson, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

_____

### OPINION

_____

COLE, Chief Judge. A Kentucky jury convicted Donald Phillips of two counts of first-degree murder. The jury considered the death penalty, but recommended life imprisonment with no possibility of parole for twenty-five years, which the judge imposed. For over six years,

Phillips sought post-conviction relief in state trial court based on ineffective assistance of counsel at sentencing. But no state court ever adjudicated the claim.

Phillips sought habeas corpus relief in federal district court, which dismissed his petition. The court found that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")'s deferential standard governed its review of Phillips's claim. It held that Phillips had not shown prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), because he had received one of the least severe sentences possible.

We conclude that AEDPA's deferential standard is inapplicable to Phillips's claim because no state court ever decided it. We also conclude that Phillips's counsel was ineffective. In failing to mount a defense during a capital sentencing, he effectively deprived Phillips of counsel throughout a critical stage of trial. Accordingly, prejudice is presumed under *United States v. Cronic*, 466 U.S. 648, 658 (1984). Further, counsel's performance actually prejudiced Phillips under *Strickland*, 466 U.S. at 691–92. Thus, we reverse the district court's judgment and grant Phillips a conditional writ of habeas corpus, requiring the Commonwealth of Kentucky to resentence him within 90 days or release him.

## I. FACTS AND PROCEDURAL HISTORY

### A. Guilt Phase

In affirming Phillips's conviction and sentence on direct appeal, the state supreme court summarized the facts in this case as follows:

> [Osa Lee Maggard and Geneva Young] were found shot to death on [Maggard's] porch in the early morning hours of July 22, 1999. Phillips and his wife were taken into custody in connection with the murders the next day. Phillips was indicted for [two counts of first-degree murder] on August 4, 1999. His wife was also indicted, but the [Commonwealth] later dismissed that indictment. Trial began on November 9, 2000 and proceeded as a capital case, with the jury panel being death-qualified. . . .

> The primary witness for the Commonwealth was Phillips' stepdaughter – his wife's daughter[, Katherine Davidson]. [Davidson] shared a driveway with [Maggard] and lived up the hill from his house. [Davidson] testified that at about 12:15 a.m. she heard her mother's car coming up the hill; she recognized the car

because she had driven it on previous occasions and was familiar with its loud muffler. When nobody came to the door, she went outside to see if anybody was there. At that point, she recognized Phillips' voice coming from the bottom of the hill. She described the following conversation between Phillips and [Maggard]:

Okay the, what I heard the conversation was I heard [Phillips], I heard them talking about what had happened prior something, him and [Maggard] had had a confrontation before and then I heard [Phillips] say well [Davidson] paid you fifteen and [my wife] paid you twenty. They was talking about thirty dollars. Said [Davidson] paid you fifteen and [my wife] twenty, that makes thirty-five dollars. He said that's five dollars over thirty dollars. He said that's five dollars, and then I heard [Maggard], he said go get [Davidson] and we will talk about this and when he said that then the shooting started and I went into the house . . . It was a long string of shots, it was like pow, pow, pow, pow, pow, I ain't for sure how many shots and then pow. By that time I was in the house when I heard you know the last shot.

(Ky. Sup. Ct. Order, App., pp. 126–27) (internal quotation marks omitted); *see* 28 U.S.C. § 2254(e)(1) (the state court's factual determinations are "presumed to be correct").

Davidson also testified that 1) Phillips's wife had owed Young money, some of which Davidson had taken for herself; 2) Maggard had repeatedly harassed Phillips's wife about the debt; 3) Maggard carried a firearm and had previously fired shots towards Davidson's home; and 4) Phillips had been drinking and was "intoxicated" the night of the shooting. (Trial Tr. III, App., pp. 395–96.)

A jury convicted Phillips of both counts of first-degree murder.

**B. Sentencing**

In Kentucky felony cases, the jury recommends a sentence to the judge, who may reject it in favor of another permitted by law. *See* Ky. Rev. Stat. Ann. §§ 532.055(2)(c); 532.070. Immediately after the verdict, the presiding judge, Cletus Maricle, asked both parties if they were prepared to proceed with sentencing. The Commonwealth said it was ready. Phillips's attorney, Stephan Charles, replied, "No, not really," but neglected to request a continuance. (Trial Tr. VI, App., p. 876.) The judge excused the jury and asked Charles how long his presentation would take. Charles answered, "I have no idea Judge. As I said . . . several times through th[ese]

proceedings, I didn't get into this as a death penalty case. *I don't know anything about death penalty litigation.*" (*Id.* at 877) (emphasis added).

Judge Maricle seems to have ignored Charles's admission, asking if he had prepared any jury instructions. Charles said no. The judge asked Charles if he had any objections to the Commonwealth's jury instructions. Charles again answered no. Charles consulted with Phillips for less than an hour prior to proceeding with the penalty phase of the trial.

The jury returned and Judge Maricle invited the Commonwealth to make its opening statement. The Commonwealth noted that the legislature "has determined that there are certain situations under which murder would warrant a more serious punishment than it would otherwise. The term they use is aggravating circumstance." (*Id.* at 882.) The Commonwealth notified the jury that it had already found the aggravating circumstance of intentional, multiple deaths in this case. The Commonwealth identified 1) death, 2) life without parole, and 3) life with no possibility of parole for twenty-five years as the "more serious punishment[s]" warranted by the aggravating circumstance. (*Id.*)

Then the court invited Charles to make his opening statement. Charles declined, clarifying, "I have nothing to say your honor." (*Id.* at 883.)

Judge Maricle asked both parties if they wished to present any evidence. Neither did, so the judge provided the jury instructions. He explained that "[t]hose are the instructions that will be in the envelope with you when you go to the jury room." (*Id.* at 883–84.)

Then Judge Maricle invited the Commonwealth to make its closing argument. The Commonwealth began by recounting the "cold bloodiness" of the "senseless killings." (*Id.* at 884.) Next, it reminded the jury that it had already found an aggravating factor. The jury had received verdict forms for five sentences: 1) the death penalty, 2) life imprisonment without parole, 3) life imprisonment with no possibility of parole for twenty-five years, 4) life imprisonment (with the possibility of parole before twenty-five years), and 5) twenty-to-fifty years of imprisonment. *See* Ky. Rev. Stat. Ann. § 532.030(1) (identifying the five sentences above as the potential penalties for someone convicted of a capital offense). But only the forms for the first three sentences acknowledged the jury had found an aggravating factor in Phillips's

case. The Commonwealth continued, "When you take these verdict forms back with you, you will see . . . there are three sentences you can impose when you find an aggravating factor. It is a very awesome responsibility to determine which is the most appropriate penalty in this case." (Trial Tr. VI, App., p. 884.) In doing so, the Commonwealth suggested that the aggravating factor in Phillips's case prevented the jury from considering the fourth or fifth sentence. At the same time, the Commonwealth assured the jury that the "three sentences under which the aggravating circumstance has to be established . . . are definitely appropriate in this case." (*Id.* at 885.) This assertion would have been unnecessary if no other sentence were available.

The Commonwealth closed with a pitch for the death penalty: "The evidence is certainly there [for it] and certainly warrants a consideration of [it]." (*Id.*)

Judge Maricle gave Charles an opportunity to make a closing statement. Rather than clarifying the jury's sentencing options or advocating for a particular sentence, Charles remarked:

> Ladies and gentlemen given the dispatch with which you resolved all the holes in the government's case that I spent two days pointing out, it's apparent to me that I'm some how not communicated with you during the first part of the trial. So I don't intend to take anymore of your time in this part.

(*Id.* at 885–86.)

The jury recommended life with no possibility of parole for twenty-five years for each count of first-degree murder, the least severe of the available sentences that required an aggravating factor. The jury also recommended that the sentences run consecutively. But as Judge Maricle clarified, they had to run concurrently because they are life sentences.

The court sentenced Phillips in January 2001. The Commonwealth presented testimony by the victims' family members. *See, e.g.*, Trial Tr. VII, App., p. 917 ("I believe with all my heart if he's ever released from prison he will kill again. I don't want any other family or individual to go through the horror of having their family murdered.").

Charles again offered no evidence and made no arguments. Instead, he identified several, mostly typographical errors in Phillips's presentencing report. (*Id.* at 920–22) (namely the

misspelling of Phillips's middle name, offenses tagged as public intoxication with a controlled substance rather than with alcohol, and omission of the possibility that Phillips owed back taxes).

The court entered the sentence that the jury had recommended with only boilerplate explanation, noting that "imprisonment is necessary for the protection of the public." (*Id.* at 925.)

On April 25, 2002, the state supreme court upheld Phillips's conviction and sentence.

### C. Attempts at State Post-Conviction Review

In October 2002, Phillips moved pro se in state trial court and under state law to vacate, set aside, or correct his sentence. One of the grounds for relief was ineffective assistance of counsel at sentencing.

Phillips's motion languished in state trial court until March 2006, when Judge Maricle himself granted Phillips two evidentiary hearings a few months apart. By that time, Phillips had obtained an attorney who dropped the ineffective-assistance-at-sentencing claim.

In June 2008, Judge Maricle issued an order that stopped short of granting Phillips's motion. It gave Phillips a month to produce any evidence that could have been presented at sentencing. Though Phillips's new attorney had failed to pursue the ineffective-assistance-at-sentencing claim, Judge Maricle, who personally observed counsel's performance, felt "compelled" to authorize relief on that basis. (Mot. to Vacate Order, App., p. 251) His assessment was unsparing: "Counsel was completely unprepared for the penalty phase of trial," which Judge Maricle suggested prejudiced Phillips. (*Id.*)

In August 2008, Phillips complied with Judge Maricle's order. He provided 1) twenty-eight affidavits from family and friends offering to appear as character witnesses and 2) an affidavit from a mitigation specialist describing what she would have supplied had she been retained, including a "comprehensive biopsychosocial investigation of [Phillips's] life history." (Mitigation Specialist Aff., App., p. 282.) The specialist testified that she would have advised counsel to deploy existing trial evidence of statutory mitigating factors, namely extreme emotional disturbance, moral justification, and intoxication.

But Judge Maricle never decided Phillips's claim, most likely because he was indicted for several offenses in March 2009 and sentenced to imprisonment himself in March 2011. *See United States v. Maricle*, No. 6:09–16–S–DCR, 2011 WL 862425 (E.D. Ky. Mar. 10, 2011). Nor did any other state judge decide Phillips's ineffective-assistance-at-sentencing claim.

## D.  Federal Habeas Corpus Proceedings

In November 2008, Phillips moved pro se in federal district court for habeas corpus relief based partly on ineffective assistance of counsel at sentencing.

Phillips asked the court to waive the requirement that federal habeas corpus petitioners first exhaust their claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996). Phillips argued that his motion to vacate, set aside, or correct his sentence, including his ineffective-assistance-at-sentencing claim, had been pending in state court for over six years.

The district court referred the matter to a magistrate judge for a report and recommendation on Phillips's federal habeas corpus petition and review of his motions. *See* 28 U.S.C. § 636(b)(1)(B). The magistrate judge waived the exhaustion requirement and stayed any state court proceedings due to the inordinate delay in adjudicating Phillips's motion. (Magistrate Judge Order, R. 32, PageID 234–35, 237) ("nearly seven years have passed since Petitioner initiated his motion for collateral relief in [state trial court]").

One of the considerations for staying state court proceedings is a "demonstrated likelihood that the [federal habeas corpus] petition will prevail." (*Id.* at 234) (quoting *Levine v. Torvik*, 986 F.2d 1506, 1518 (6th Cir. 1993), *overruled on other grounds as recognized by JiQiang Xu v. Mich. State Univ.*, 195 F. App'x. 452, 457 (6th Cir. 2006)). The magistrate judge found that "Phillips could potentially prevail on the ground of ineffective assistance at the sentencing phase given the [trial] court's description of trial counsel as 'completely unprepared' and its request for further evidence from Petitioner." (*Id.*) The magistrate judge, however, did not review Phillips's petition on the merits.

By September 2011, Phillips's federal habeas corpus petition had been transferred to another magistrate judge, who recommended denying relief. The magistrate judge assumed that

AEDPA deference applied.  Further, he found Phillips had not shown that Charles's performance prejudiced him under *Strickland* even if it was deficient.  The magistrate judge noted that Phillips had not only avoided the death penalty, but received "a less severe term than was available under the relevant Kentucky statute." (Magistrate Judge R & R, R. 61, PageID 373–74.)

In December 2014, the district court adopted the magistrate judge's report and recommendation and dismissed Phillips's habeas corpus petition with prejudice.  The court agreed that AEDPA deference applied without specifying which state court had decided Phillips's ineffective-assistance-at-sentencing claim.  (Dist. Ct. Order, R. 77, PageID 540) ("The claims in Phillips' habeas petition were adjudicated by the state court either through appeal, evidentiary hearings, or other motions and orders from either the trial court or the Kentucky Supreme Court.").  The district court also agreed that Phillips had not shown prejudice under *Strickland* because he received "one of the most favorable outcomes he could have under the circumstances." (*Id.* at 562.)

On January 7, 2016, we granted Phillips a certificate of appealability ("COA") as to his "claim of ineffective assistance of trial counsel concerning the lack of a defense at sentencing." (COA, R. 89, PageID 785.)  We noted that "[a]ny failure to even mount a defense almost certainly falls below the objective standard of reasonableness, let alone at a sentencing hearing in which the death penalty was a real possibility." (*Id.*)  We concluded that "reasonable jurists could debate the district court's conclusion that Phillips failed to show prejudice in the context of his counsel's ineffective assistance during sentencing." (*Id.*)

## II. ANALYSIS

### A. Standard of Review

In appeals from habeas corpus determinations, we review a district court's legal conclusions de novo.  *Cvijetinovic v. Eberlin*, 617 F.3d 833, 836 (6th Cir. 2010).

The parties agree that AEDPA's deferential standard of review is inapplicable to Phillips's claim because "[n]o state court ever ruled on this issue." Commonwealth Br. 24; *see also* Pet'r Br. 19–20.  *See* 28 U.S.C. § 2254(d) (applying to "any claim that was adjudicated on

the merits in State court proceedings"); *Cone v. Bell*, 556 U.S. 449, 472 (2009) (applying de novo review where state courts had not reached merits of habeas corpus claim).

But this raises the question of whether the requirement to exhaust state remedies was properly waived. The Commonwealth does not address this question. The Supreme Court has "instructed appellate courts to take a fresh look at [nonexhaustion]" even when the state has abandoned the argument so they can "determine whether the interests of comity and federalism will be better served by addressing the merits forthwith." *Rockwell v. Yunis*, 217 F.3d 421, 423 (6th Cir. 2000) (internal quotation marks omitted).

Though the requirement is not jurisdictional, federal courts avoid deciding unexhausted claims unless there are "unusual" or "exceptional" circumstances. *Id.* (quoting *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996)). These include "circumstances . . . that render [the state court] process ineffective to protect the rights of the [petitioner]." 28 U.S.C. § 2254(b)(1)(B)(ii). "Inordinate delay in adjudicating state court claims" can do exactly that. *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992) (highlighting "the principle that federal courts should defer to state courts in the interest of comity assumes that the state courts will give prompt consideration to claims").

Phillips clearly qualifies for the "inordinate delay" exception to the exhaustion rule. He presented his ineffective-assistance-at-sentencing claim to the state trial court in 2002, received only a request for additional evidence from the court in June 2008, and had not heard anything further in September 2009, when a magistrate judge waived the exhaustion requirement. By contrast, the petition that we exempted from the exhaustion rule in *Workman* had "languished in the state courts" for less than four years. *Id.* Moreover, at no point did Phillips acquire a basis for seeking relief in the state appellate or supreme court. *See* Kentucky Court of Appeals, Basic Appellate Practice at 9 (June 2010) ("[A] judgment is considered final and appealable only if that judgment disposes of all of the claims presented in a [trial] court lawsuit"). This rendered the state process ineffective and limited Phillips to federal remedies.

For these reasons, waiver of the exhaustion requirement was proper and we review Phillips's claim unconfined by AEDPA.

**B. Deficient Performance**

    *1.    Failure to investigate or present mitigating evidence at capital sentencing, or raise an argument there that could reduce petitioner's sentence, may constitute deficient performance*

The Sixth Amendment provides those facing the threat of incarceration with a right to counsel "at all critical stages of the criminal process," including the "sentencing hearing." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (internal quotation marks and citation omitted); *see Coleman v. Mitchell*, 268 F.3d 417, 452 (6th Cir. 2001) ("The sentencing phase is likely to be the stage of the proceedings where counsel can do his or her client the most good.") (internal quotation marks omitted). To establish ineffective assistance at sentencing, petitioner must show that counsel's performance was "deficient," meaning so defective that he ceased functioning as counsel under the Sixth Amendment. *Strickland*, 466 U.S. at 687. This standard is highly deferential. *Id.* at 689. Petitioner must overcome a presumption that counsel's performance could be considered sound strategy in the circumstances in which he found himself. *Id.*

Though there is no checklist for evaluating an attorney's performance, courts have repeatedly recognized that failure to investigate or present mitigating evidence at capital sentencing may constitute deficient performance. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 366, 393 (2000) ("[I]t is undisputed that Williams had a right—indeed, a constitutionally protected right—to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer."); *Harries v. Bell*, 417 F.3d 631, 637 (6th Cir. 2005) ("[N]otwithstanding the deference *Strickland* requires, neither this court nor the Supreme Court has hesitated to deem deficient counsel's failure to [obtain and present something in mitigation]."); *Coleman*, 268 F.3d at 449 ("[T]he independent obligation of defense counsel to investigate and present mitigating evidence at the penalty phase of a capital trial is well-established by this Court").

We have also specified that counsel should complete the investigation before the guilt phase of trial. *Hamblin v. Mitchell*, 354 F.3d 482, 487 (6th Cir. 2003) ("[T]he time consuming task of assembling mitigating witnesses should not wait until after the jury's verdict.") (internal

quotation marks and citation omitted); *see Glenn v. Tate*, 71 F.3d 1204, 1206–11 (6th Cir. 1995) (finding counsel's unpreparedness, which prevented the jury from hearing any mitigating evidence, constituted deficient performance).

Most of the cases in which we have held that counsel's sentencing performance was deficient have involved failure to investigate or present *certain* mitigating evidence rather than abdication of the duty. In *Harries*, a jury sentenced petitioner to death for killing a store clerk during an armed robbery. 417 F.3d at 634. Defense counsel contacted petitioner's family members, reached out to institutions in which he had been confined, and requested two competency evaluations, among other things. *Id.* at 638. Yet we found the investigation deficient. *Id.* at 638–39. We cited counsel's failure to enlist a mental-health expert after learning petitioner suffered from mental illness, and to thoroughly explore petitioner's family background given signs of childhood trauma. *Id.*

The Supreme Court's assessment in *Williams* signals the depth and detail with which capital defense counsel ordinarily must investigate and present mitigating evidence at sentencing. There, petitioner was sentenced to death for robbery and murder. *Williams*, 529 U.S. at 368, 370. The Court faulted counsel for not introducing (among other things) 1) documents describing petitioner's abusive childhood, 2) testimony that petitioner was "borderline mentally retarded," and 3) records reflecting petitioner's cooperation and good behavior in prison. *Id.* at 395–96.

Thus, despite the presumption that counsel's performance could be considered sound strategy, courts have been reluctant to attribute the omission of relevant mitigating evidence at capital sentencing to reasonable tactics. *See id.* at 396 (refusing to accept counsel's failure to present extensive favorable evidence as part of viable strategy to withhold less extensive unfavorable evidence); *Hamblin*, 354 F.3d at 489–90, 493 (concluding that counsel, who had never tried a capital case and was unaware of the groundwork needed for a capital sentencing hearing, presented no mitigating evidence due to unpreparedness, not "trial strategy"); *Austin v. Bell*, 126 F.3d 843, 849 (6th Cir. 1997) (finding counsel's failure to investigate and present mitigating evidence at sentencing "an abdication of advocacy" amounting to ineffective assistance rather than a "strategic decision" because of the number and kinds of people willing to

testify on petitioner's behalf). *But see Wickline v. Mitchell*, 319 F.3d 813, 820–21 (6th Cir. 2003) (finding no deficient performance under AEDPA where counsel decided not to present mitigating evidence at capital sentencing because "it would open the door for the prosecution to bring in evidence of bad acts committed by [petitioner]").

Ineffective assistance at sentencing is scarcely limited to not investigating or presenting mitigating evidence. Failure to raise an argument that could reduce petitioner's sentence may also constitute deficient performance. *McPhearson*, 675 F.3d at 559. *See, e.g., United States v. Soto*, 132 F.3d 56, 59 (D.C. Cir. 1997) (finding failure to seek downward adjustment for minimal participation in offense a "drastic misstep[] [that] clearly satisf[ied] *Strickland*'s first test").

### 2. *Charles's failure to mount a defense at sentencing was clearly deficient*

Phillips correctly argues that Charles's sentencing performance was deficient because he neglected to mount any defense, including to investigate or present mitigating evidence.

Indeed, Charles admitted in court that he had no experience with death-penalty litigation and was unprepared for sentencing. He made no opening statement, called no witnesses, and presented no evidence—mitigating or otherwise. Charles's lack of knowledge as to what a capital sentencing hearing requires, coupled with his inaction during Phillips's penalty phase, demonstrates clearly that he conducted no investigation of mitigating evidence.

Phillips's response to the order requesting any evidence that could have been presented at sentencing reveals the information that Charles's performance kept the jury and judge from considering. This includes substantial character evidence from family and friends supporting a capacity for rehabilitation.

At the same time, the affidavit of the mitigation specialist shows that some relevant information, from Phillips's medical history to his social-service records, remains unknown to us due to Charles's inaction. The affidavit of the mitigation specialist also notes that the trial record contained evidence supporting mitigating factors under the Kentucky Penal Code, § 532.025. The Commonwealth wrongly denies this.

Charles could have argued that Phillips committed the offenses under 1) "the influence of extreme . . . emotional disturbance" or 2) belief that they were morally justified because he feared Maggard and Young posed a grave and imminent threat to his wife and stepdaughter. Ky. Rev. Stat. Ann. §§ 532.025(2)(b)(2), 532.025(2)(b)(4); *Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky. 2000) (describing extreme emotional disturbance as a "state of mind so . . . disturbed as to overcome one's judgment") (internal quotation marks and citation omitted).

"As long as there is some evidence to support the mitigation factor, then the court is required to [ask the jury to consider it]." *Emerson v. Commonwealth*, 230 S.W.3d 563, 571 (Ky. 2007) (internal quotation marks and citation omitted). In the guilt phase of trial, Davidson testified that 1) Phillips's wife owed Young money, some of which Davidson had taken for herself; 2) Maggard had repeatedly harassed Phillips's wife about the debt; 3) Maggard not only regularly carried a firearm, but had previously fired shots towards Davidson's home; and 4) immediately before the shooting, Maggard insisted Phillips "get" Davidson so they could settle the debt. Davidson's testimony showed that both Maggard and Young had an incentive to injure Phillips's family, Maggard had the capacity and willingness to do so, and Maggard appeared on the verge of aggression on the night of the shooting. This would have been enough for Judge Maricle to ask the jury to consider whether Phillips was intensely disturbed or felt there were extenuating circumstances when he committed the offenses. *See Smith v. Commonwealth*, 845 S.W.2d 534, 539 (Ky. 1993) (finding testimony that victim repeatedly spurned grieving defendant before he killed her sufficient to ask jury to consider extreme emotional disturbance factor); *Emerson*, 230 S.W.3d at 571 (finding mother's testimony that son killed victim to protect her sufficient to ask jury to consider moral justification factor).

Charles could also have argued that Phillips's capacity to "appreciate the criminality of his conduct . . . was impaired as a result of . . . intoxication." Ky. Rev. Stat. Ann. § 532.025(2)(b)(7). Davidson testified that Phillips had not only been drinking the night of the shooting, but was intoxicated. *See Smith,* 845 S.W.2d at 539–40 (testimony that defendant and victim drank together and that beer cans were found in defendant's apartment on night of victim's death sufficient to ask jury to consider intoxication factor).

When Charles neglected to conduct any mitigation investigation at all or present even existing evidence supporting statutory mitigating factors, he ceased functioning as counsel under the Sixth Amendment. *Compare* Trial Tr. VI, App., pp. 876–92 *and* Trial Tr. VII, App., pp. 913–25, *with Harries*, 417 F.3d at 638 (finding deficient performance where counsel pursued several leads as part of mitigation investigation).

Further, Phillips correctly argues that Charles's failure to clarify that the jury could sentence him to life imprisonment (with the possibility of parole before twenty-five years) or twenty-to-fifty years is another basis for deficient performance. The Commonwealth's opening and closing arguments were at best unclear. These arguments may have led some jurors to believe that the aggravating factor in Phillips's case barred them from considering a sentence less severe than life imprisonment with no possibility of parole for twenty-five years. Clearly, Charles was deficient in failing to rebut the Commonwealth's assertions.

Thus, Charles's choice not to delineate the jury's sentencing options, much less argue that twenty-to-fifty years was appropriate over the death penalty, constitutes deficient performance.

Moreover, the one statement that Charles offered at sentencing reproached the jury for finding his guilt-phase presentation unpersuasive. Far from helping Phillips, Charles's remark threatened to alienate jurors and undermine their confidence in him.

The Commonwealth asserts that Charles's conduct was part of a strategy, developed with Phillips, not to inflame the jury after Charles failed to sway it during the guilt phase. Commonwealth Br. 27–28. But Phillips has overcome the presumption that Charles's performance could be considered a reasonable tactic. Charles admitted in court that he was unfamiliar with death-penalty litigation and unprepared for sentencing. His lack of knowledge, skill, and readiness made it impossible to devise a sound plan for the penalty phase of Phillips's trial. *See Sowell v. Anderson*, 663 F.3d 783, 790 (6th Cir. 2011) ("Because they were not aware of . . . additional mitigating evidence, [petitioner's] attorneys were not in a position to make a conscious, strategic decision about the type of mitigation case to present at sentencing."). Phillips's case is analogous to *Hamblin*, in which we refused to ignore common sense by

attributing inaction by inexperienced counsel to strategy and not inexperience.  354 F.3d at 489–90, 493.

In any event, courts are generally reluctant to accept something as stark as not investigating or presenting mitigating evidence at capital sentencing as a reasonable tactic. Failing to argue against the death penalty and advocate for a lesser sentence is even less reasonable.

For these reasons, Charles's sentencing performance was clearly deficient.

## C. Prejudice

> *1.     We may presume prejudice under* Cronic *where counsel deprives petitioner of assistance throughout sentencing*

To establish ineffective assistance at sentencing, petitioner must show that counsel's deficient performance prejudiced him.  *Strickland*, 466 U.S. at 691–92.  Some performances are so likely to prejudice the petitioner that it is unnecessary to litigate their effect.  *Cronic*, 466 U.S. at 658–60; *see also Rickman v. Bell*, 131 F.3d 1150, 1155 (6th Cir. 1997).  In these instances, we may presume prejudice.  *Cronic*, 466 U.S. at 659; *Rickman*, 131 F.3d at 1155.  The Supreme Court has cautioned that such instances are rare, however.  *Florida v. Nixon*, 543 U.S. 175, 190 (2004).

For *Cronic* prejudice to apply, petitioner must be deprived of counsel during a critical stage of trial, such as sentencing.  *United States v. Ross*, 703 F.3d 856, 873–74 (6th Cir. 2012); *Van v. Jones*, 475 F.3d 292, 299, 309 (6th Cir. 2007) (collecting Supreme Court cases recognizing sentencing as a critical stage).  The deprivation can be literal, as when counsel fails to appear, or it can be constructive, as when counsel's performance is so defective that he may as well have been absent.  *Cronic*, 466 U.S. at 654 n.11; *Rickman*, 131 F.3d at 1155.  This happens when counsel "fails to subject the [state's] case to meaningful adversarial testing" and the stage loses "its character as a confrontation between adversaries."  *Cronic*, 466 U.S. at 657, 659; *see, e.g., Martin v. Rose*, 744 F.2d 1245, 1250 (6th Cir. 1984) (finding *Cronic* prejudice where instead of "participating in the trial to hold the government to its burden of proof, [petitioner's]

trial counsel stood mute, offering the jury virtually no option but to convict him") (internal quotation marks omitted).

Further, the deprivation of counsel must persist throughout the given stage. In *Bell v. Cone*, the Supreme Court declined to presume prejudice where counsel failed to introduce mitigating evidence or make a closing argument during a capital sentencing hearing, but made an opening statement "call[ing] the jury's attention to the mitigating evidence already before [it]," cross-examined some of the state's witnesses, and unsuccessfully pleaded for petitioner's life. 535 U.S. 685, 691–92 (2002). The Court found *Strickland* rather than *Cronic* review proper because counsel failed to oppose the state only "at specific points," not "throughout the sentencing proceeding as a whole." *Id.* at 697. As one court has summarized, "non-representation, not poor representation, triggers a presumption of prejudice." *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007) (per curiam) (finding *Cronic* prejudice where counsel did nothing at sentencing except move for a new trial).

> 2. *Charles's nonperformance at sentencing prejudiced Phillips under* Cronic

The Commonwealth asserts that arguments concerning *Cronic* are "outside of the question designated by this [c]ourt in its certificate of appealability." Commonwealth Br. 24. This is a red herring.

The court granted a COA as to Phillips's "claim of ineffective assistance of trial counsel concerning the lack of a defense at sentencing." (COA, R. 89, PageID 785.) As Phillips points out, the claim encompasses the issue of *Cronic* prejudice. *See Steele v. Randle*, 37 F. App'x 162, 164–65 (6th Cir. 2002) (per curiam) (finding issue properly before court where it was "inherently intertwined" with claim identified in COA); *see also Holmes v. Spencer*, 685 F.3d 51, 58 (1st Cir. 2012) (finding issue properly before court where it was "fundamentally intertwined" with claim identified in COA).

Moreover, Phillips argued in his supporting memorandum that "*Cronic* is the appropriate standard by which [my] claim of ineffective assistance is to be judged." (Fed. Habeas Corpus Mem., R. 1-2, PageID 55.) Thus, the issue of *Cronic* prejudice was squarely before us when we issued the COA and is reflected in the COA.

We presume prejudice in this case because Charles's performance amounted to nonperformance; he essentially ceded the sentencing to the Commonwealth.

The Commonwealth incorrectly likens Charles's performance to that in *Bell v. Cone*. Charles constructively deprived Phillips of counsel throughout sentencing by neglecting to make an opening statement; failing to investigate or present evidence, mitigating or otherwise; and offering a potentially off-putting and self-deprecating remark.

This gave the Commonwealth carte blanche at the sentencing hearings. The notion that the killings were "senseless" and impression that the least severe sentence available was life with no possibility of parole for twenty-five years went entirely unchallenged. (Trial Tr. VI, App., p. 884.) So too did the Commonwealth's plea for the death penalty and testimony that Phillips would surely "kill again" if he were ever released. (Trial Tr. VII, App., p. 917.) Phillips's sentencing was a presentation by one party, not a contest between adversaries.

Thus, Charles's sentencing performance prejudiced Phillips under *Cronic*.

> 3.    *The possibility that mitigating evidence might have resulted in a different sentence, and reasonable probability that petitioner would have avoided additional time in prison, each establishes prejudice under* Strickland

Phillips does not need to establish prejudice under *Strickland* to succeed on his ineffective-assistance-of-counsel claim because he has already done so under *Cronic*. Nevertheless, he has shown a reasonable probability that he would have received life imprisonment (with the possibility of parole before twenty-five years) or twenty-to-fifty years but for Charles's performance. Thus, actual prejudice has been established.

To establish actual prejudice under *Strickland*, petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" or to make the outcome unreliable. *Id.*; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

Actual prejudice exists when mitigating evidence *might* have influenced the sentencer's assessment of petitioner's "moral culpability" and resulted in a "different sentence" given the

totality of evidence in the case. *Wiggins v. Smith*, 539 U.S. 510, 535–36, 538 (2003); *see also Phillips v. Bradshaw*, 607 F.3d 199, 216 (6th Cir. 2010); *Harries*, 417 F.3d at 640 (clarifying that the test is *not* if the jury could have imposed the same sentence even if it had heard the unpresented evidence).

In *Miller*, for example, the court proceeded to find *Strickland* prejudice even after presuming it under *Cronic*. 481 F.3d at 474. The Commonwealth in that case successfully argued for double the presumptive sentence based on aggravating circumstances. *Id.* at 470. Yet defense counsel chose not to "offer a shred of mitigating evidence," leaving the aggravating evidence completely unchallenged. *Id.* at 473. Counsel failed "even [to] lobby for a sentence lower than the one urged by the State" or object to substantive errors in petitioner's presentencing report. *Id.* The court found a reasonable probability that "the outcome of the proceedings was affected by [counsel's] performance." *Id.* at 474. *See also Williams*, 529 U.S. at 398 (finding account of abusive childhood and proof of mental retardation "might well have influenced the jury's appraisal of [petitioner's] moral culpability" and yielded a lighter sentence since the circumstances of the crime suggested compulsion rather than premeditation). *But see Wong v. Belmontes*, 558 U.S. 15, 27–28 (2009) (per curiam) ("[T]he notion that the result could have been different if only [counsel] had put on more than the nine witnesses he did, or called expert witnesses to bolster his case, is fanciful").

Actual prejudice also exists when there is a reasonable probability that petitioner would have avoided even "a minimal amount of additional time in prison" were it not for counsel's performance at sentencing. *Glover v. United States*, 531 U.S. 198, 203 (2001). In *McPhearson*, for instance, a jury convicted the petitioner of knowingly possessing drugs with intent to distribute them, but its verdict did not establish that the entire drug quantity was for distribution. 675 F.3d at 557. At sentencing, defense counsel neglected to argue that a portion of the drugs was for personal use. *Id.* at 559. Had counsel done so and the district judge agreed, petitioner's sentencing range would have dropped from a range of 140 to 175 months to either 120 to 150 months or 100 to 125 months. *Id.* at 563. The court concluded that petitioner was "clearly prejudiced" by counsel's failure to raise the personal-use argument if it was plausible that some of the drugs were for personal use. *Id.* Thus, it remanded the case on that factual question.

> **4.** *Charles's failure to clarify the jury's sentencing options or present evidence at sentencing each prejudiced Phillips under* Strickland

As discussed above, Charles failed to clarify that life imprisonment (with the possibility of parole before twenty-five years) and twenty-to-fifty years were available after the Commonwealth implied that an aggravating factor barred the jury from considering them. He certainly did not advocate for the sentences. Phillips argues that the jury's willingness to recommend the lightest sentence that the Commonwealth identified shows there was a reasonable probability that the jury was willing to go even lower. The jury's recommendation that the sentences run consecutively rather than concurrently may undercut this contention, or it may reflect the jury's judgment that each murder should be accounted for separately. In any event, it does not change the likelihood that the jury made its recommendation unaware of two possible sentences. Thus, the sentence it did recommend is unreliable.

Similarly, Phillips has shown that Charles neglected to offer proof of Phillips's 1) character from family and friends, 2) belief that Maggard and Young posed a grave and imminent threat to his wife and stepdaughter, and 3) intoxication on the night of the shooting, not to mention the evidence that the mitigation specialist highlighted and is largely unknown to us. There is more than a reasonable probability that one of these could have influenced the jury's assessment of Phillips's moral culpability and resulted in a different sentence. The possibilities that the evidence above introduces make the actual outcome of Phillips's sentencing unreliable.

The Commonwealth argues that Charles's performance did not prejudice Phillips because he "received the least onerous aggravated sentence" and avoided the death penalty. Commonwealth Br. 28. This misinterprets *Strickland* prejudice. The test is whether there is a reasonable probability that the result would have differed from what it was, in this case, life with no possibility of parole for twenty-five years. As we have explained, there is such a probability here. Further, petitioners who once faced the threat of the death penalty do not lose the opportunity to show counsel's performance prejudiced them because it did not lead to the worst possible outcome. Imposing a higher burden on capital defendants would be counterintuitive and conflict with Supreme Court precedent. *See Simmons v. South Carolina*, 512 U.S. 154, 185

(1994) (Scalia, J., dissenting) (highlighting a "death-is-different" jurisprudence in which the Court has repeatedly made special concessions for capital defendants).

Charles's performance at sentencing prejudiced Phillips under *Strickland* because there is a reasonable probability that he would have received a lesser sentence otherwise.

### III. CONCLUSION

Because Phillips's counsel provided ineffective assistance at sentencing, we reverse the district court's judgment and grant Phillips a conditional writ of habeas corpus, requiring the Commonwealth of Kentucky to resentence him within 90 days or release him.