RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

PAUL MONEA,

                                    *Petitioner-Appellant*,

      *v.*

UNITED STATES OF AMERICA,

                                      *Respondent-Appellee*.

No. 16-4250

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
Nos. 5:07-cr-00030-2; 5:11-cv-02108—John R. Adams, District Judge.

Argued: October 19, 2018

Decided and Filed: January 22, 2019

Before: KEITH, CLAY, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Matthew D. Rowen, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Matthew D. Rowen, Erin E. Murphy, Megan M. Wold, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

NALBANDIAN, Circuit Judge. After the FBI arrested Paul Monea for money laundering, he told his attorney that the undercover agent coerced him into committing the crime. Those claims turned into allegations that the government tampered with evidence.

And eventually—after the jury convicted him—Monea found a witness claiming that the undercover FBI agent lied on the stand. So he asks the court for a writ of habeas corpus, either because his trial counsel ineffectively pursued the evidence-tampering claim, or because the government's star witness perjured himself. But neither claim ends up bearing much fruit. We affirm.

## I.

The FBI arrested Paul Monea on December 13, 2006 after a prolonged sting operation. *See United States v. Monea*, 376 F. App'x 531, 533–35 (6th Cir. 2010). Undercover agent John Tanza posed as a man named Rizzo, a cocaine-broker who needed help cleaning cash for his drug-dealing clients. *Id.* at 533. He met Monea through a mutual acquaintance, purportedly in search of legitimate businesses to invest in. *Id.* Eventually, Monea agreed to sell a 43-carat diamond and some real estate to Rizzo's clients for $19 million. *Id.* at 534–35. But Monea was apprehensive about dealing in cash, so he asked Rizzo to wire him a deposit. Rizzo then sent Monea $100,000 in three separate transactions—supposedly because he did not have the money to wire it in one lump sum. *Id.* Soon after that the FBI arrested Monea for four separate money-laundering related crimes.

Sometime later, Monea learned from an acquaintance that Tanza might not have been completely forthcoming on the witness stand about why he wired the deposit in three separate transactions. Nancy McCann, the trustee of the Monea Family Trust, claims she overheard Tanza tell a colleague that he deliberately structured the $100,000 deposit as three different transactions to ensure the Government could charge Monea with three separate counts of money laundering. But when Monea's attorney asked Tanza during trial why he wired three different payments, Tanza testified that he did not have enough money to pay it out as a lump sum.

Early on after his arrest, Monea claimed that Tanza coerced him into going along with the plan by threatening him and his family. But it turned out that much of the case against Monea was captured on a wire, and the audio tapes contained no evidence of the alleged threats. Monea's claims about coercion soon turned into allegations that the Government tampered with the tapes to delete evidence of misconduct. And that's when the problems began.

In March 2007, Monea alerted his attorney, William Whitaker, to his suspicion that the Government tampered with the tapes. Whitaker admits that he was skeptical. But he agreed to meet with a private investigator in early April to discuss the issue. The investigator, Michael Robertson, proposed a significant investigation for $50,000. Whitaker pushed back. Instead, they agreed to a preliminary review of the tapes for $1,000. But no one ever paid Robertson the money to retain him.

Trial was scheduled to begin about a month later. Whitaker asked for a continuance, but he declined to raise the tampering issue without more evidence. He cited the voluminous record and substantial number of audio recordings as grounds for the delay. The district court denied his request.

The night before trial, Robertson contacted Whitaker about the recordings. Robertson had started listening to the tapes "out of curiosity" (because he still had not been paid) and discovered an anomaly. R. 175, Hr'g Tr. at 89–91, PageID 5769–71. But Whitaker rebuffed him. Robertson was not qualified to testify about such issues, Whitaker said. And he would not bring the issue to the court without competent evidence from a qualified witness. So the trial continued, and Whitaker made no objection to the authenticity of the tapes as the Government introduced them.

Then Robertson forced the issue. He found another witness and produced an affidavit confirming the anomaly. This put Whitaker in a tough spot. The evidence at trial had already closed, and the district judge was about to instruct the jury. Whitaker asked for a sidebar with the court and explained that his investigator discovered evidence suggesting that one of the tapes might have been altered. Although Robertson informed him of the issue "[o]n the eve of trial," Whitaker told the court that he chose not raise it at that time because Robertson "wasn't qualified to testify to a requisite degree." R. 280, Trial Tr. at 869, PageID 3233.

To put it mildly, the judge did not appreciate the timing. He chastised Whitaker for sitting on the issue, stating that Whitaker "had an obligation to bring it forward and call it to the court's attention" as soon as he could. R. 280 at 873, PageID 3237. But the judge did not punish Monea for the delay. The judge finished the trial and told Whitaker he could file a post-trial

brief to address the issue if necessary. The judge also gave Whitaker a bit of an assist. He provided Whitaker with the name and contact information of a qualified forensic analyst who could conduct an independent examination of the audio recording. After the sidebar, the jury convicted Monea on all four counts.

For whatever reason, Whitaker did not hire the court's recommended independent expert. He instead retained two other individuals—a music professor and his assistant—to examine the recordings. He then moved to vacate the conviction and asked for an evidentiary hearing to explore the authenticity of the tapes.

The district court held a six-hour hearing on October 15, 2007. It quickly became apparent that the court believed that neither of Monea's witnesses was qualified to opine about the authenticity of the recordings, and it rejected their proffered testimony. The Government, on the other hand, produced several qualified witnesses to rebut Monea's unsubstantiated claim that the tapes had been altered. Collectively they testified that it would require a complex conspiracy among many different individuals to successfully alter one of these recordings. That's because Tanza could not turn the device on or off on his own, the metadata showed that the audio files had not been modified, and these types of files would not play if a modification had been made. Monea had no answer to this testimony.

By the end of the hearing, the Government had provided overwhelming and unrebutted evidence that the tampering claim was farfetched. So Whitaker continued to search for qualified witnesses to examine the audio recording. He found two, James Reames and Gregg Stutchman, and submitted a supplemental brief about one month later. Both witnesses stated they believed the recording contains an anomaly attributable to an alteration. Whitaker asked for a second hearing to put on additional testimony from Reames and Stutchman. He also asked to analyze the device.

The district court denied Monea's post-trial motion and did not permit Reames or Stutchman to testify. It did so after it "thoroughly considered" the affidavits and determined that Reames's and Stutchman's testimony would not sufficiently rebut the Government's witnesses and prove the tampering claim. *See Monea*, 376 F. App'x at 548–50. The court also refused

Monea's request for access to the recording device, finding that Monea's speculative evidence did not merit requiring the Government to turn over a highly confidential device. We upheld both decisions on appeal. *See Monea*, 376 F. App'x at 548–50.

The district court judge eventually sentenced Monea to 150 months, a substantial downward variance from the 235-month recommendation under the guidelines. He imposed that sentence after first expressing substantial misgivings about what he perceived to be Monea's eleventh-hour gamesmanship over the audio recordings. Without the "contrived" antics, the judge explained, "a variance in this case would be extraordinarily likely." R. 216, Sentencing Hr'g Tr. at 142–44, PageID 2066–68. But then he backtracked a bit. He said he could set aside his frustration about the tampering issue and vary downward from the recommendation, which he ultimately did.

Monea eventually moved for habeas relief. He asserted six grounds to vacate his conviction and sentence under 28 U.S.C. § 2255. The district court denied each one, and we granted a certificate of appealability on two. First, we granted a certificate to appeal Monea's claim that Whitaker provided ineffective assistance of counsel by failing to properly investigate and present the evidence-tampering claim to the trial court. Second, we granted a certificate to appeal his claim that Tanza perjured himself on the witness stand. But we denied Monea's request to appeal whether he suffered sentencing prejudice from Whitaker's inadequate representation. And finally, we certified whether the district court should have held an evidentiary hearing under 28 U.S.C. § 2255(b).

II.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). Defendants claiming ineffective assistance must establish two things. First, that the attorney's performance fell below "prevailing professional norms." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). And second, that the attorney's poor performance prejudiced the defendant's case. *Id*. Courts need not address the first element if the petitioner cannot prove prejudice. In fact, "[i]f it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Proving prejudice is not easy. Monea faces a "high burden" in demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted). He attempts to do this in two ways. First, he argues that Whitaker's poor performance deprived him of a complete defense because tampering with evidence amounts to a due-process violation. Second, Monea contends that his attorney's inadequate representation prejudiced him at sentencing because the district court blamed Monea for raising the issue at the eleventh hour. But even if we assume that Whitaker performed deficiently, neither claim of prejudice passes muster.

*Denial of a complete defense.* Monea's more substantive claim of prejudice is that Whitaker's lackluster representation denied him an opportunity to present a defense of "outrageous government conduct." This defense is a bit of a leprechaun, discussed by many courts but rarely—if ever—found. *See United States v. Tucker*, 28 F.3d 1420, 1425–26 (6th Cir. 1994). It arises when the government acts so outrageously that it "shocks the conscience." *United States v. Warwick*, 167 F.3d 965, 974–75 (6th Cir. 1999). When applicable, outrageous conduct can be a complete defense. *Id.* Monea argues that tampering with evidence to hide a death threat constitutes a rare circumstance where the government acts so outrageously as to afford a defendant a complete defense. Had Whitaker raised the claim effectively, he says, the charges would have been dismissed.

The puzzling part of Monea's claim is that he does not offer any new evidence that a better attorney would have discovered and presented below. *See, e.g., Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005). Rather, he focuses almost exclusively on timing. According to Monea, Whitaker's repeated failure at effectively pursuing this claim prejudiced him because the court had only a "cursory" opportunity to review the evidence by the time Whitaker found it. And that cursory review did not include live testimony from Reames and Stutchman, which could have altered the court's analysis of the issue.

But this argument ignores the reality of the district court's decision denying Monea's post-trial motion and our later ruling on direct appeal. The court did not engage in a "cursory" review of the evidence. It "thoroughly considered" the affidavits from Reames and Stutchman and concluded that they could not overcome the Government's contrary evidence. *Monea*, 376 F. App'x at 548–50. In doing so, the district court expressly denied that the timing affected its decision. Whitaker, for all his alleged missteps, eventually obtained the same evidence that Monea now relies on—and he gave it to the court in time for the judge to consider it on the merits.

It is not enough for Monea to argue that a different attorney would done a better job. What matters is whether it would have made a difference. *See Davis*, 658 F.3d at 536. On that front, Monea provides no new evidence and no new arguments that would have altered the trial court's denial of his outrageous-conduct defense. Because of Monea's failure to demonstrate prejudice, we affirm the decision denying habeas relief on this issue.

*Sentencing prejudice.* Monea also contends that Whitaker's performance prejudiced him at sentencing. He bases this claim on a few comments the district court judge made blaming Monea for what the judge viewed as last-minute gamesmanship over the evidence-tampering claim. The judge eventually "set . . . aside" his concerns and varied downward with Monea's sentence, R. 216 at 156 & 176, PageID 2080 & 2100, but Monea argues that he would have likely received an even greater variance if Whitaker raised the claim timely. Later, the judge himself rejected this assertion. He specifically said that it would not have mattered because he "was still left with a defendant who had not fully accepted responsibility for his actions and who had willfully engaged in criminal behavior while on supervised released." R. 406, Mem. Op. & Order at 9, PageID 5499.

Regardless, we lack jurisdiction to consider this issue on the merits. Prisoners seeking habeas relief under 28 U.S.C. § 2255 do not have a general right to appeal. Before doing so, they must obtain a certificate of appealability from the circuit court. 28 U.S.C. § 2253(c). That certificate defines (and limits) the scope of our jurisdiction. *Id.*; *see Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). It must state the "specific issue or issues" subject to appeal.

28 U.S.C. § 2253(c)(3). And we can only certify issues for appeal if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Monea does not have a certificate to appeal the sentencing-prejudice issue—and not for lack of trying. He raised five different ineffective-assistance claims in his original motion for habeas relief. Of those five, we only certified one issue for appeal—his claim that Whitaker failed to effectively present evidence that the government tampered with the tapes. Among the issues we rejected was Monea's claim that his counsel's inadequate performance prejudiced him at sentencing. That claim, we held, had no support in the record and could not be reasonably debated. *See* 28 U.S.C. § 2253(c)(2). So we denied a certificate on that issue.

Monea now attempts to graft the argument onto the ineffective-assistance claim we did allow him to appeal. He contends that the issue is broad enough to include the sentencing-prejudice argument we rejected on its own terms. But that finding would undermine the jurisdictional limit imposed by 28 U.S.C. § 2253(c) and our prior opinion. We have jurisdiction only to resolve the "specific issues" certified for appeal. And we rejected Monea's request to certify whether he was prejudiced by the sentencing court's apparent belief that Monea caused the last-minute disruption. That means we lack jurisdiction over the issue, despite his creative attempt to broaden the scope of his certificate. We therefore affirm the district court's denial.

III.

Monea's second claim is that the Government engaged in prosecutorial misconduct by presenting perjured testimony during the trial. The "deliberate deception of court and jury by the presentation of testimony known to be perjured" violates a defendant's due-process rights. *See Mooney v. Holohan*, 294 U.S. 103, 112 (1935). To prevail on such a claim, Monea must show that the Government knowingly presented false testimony that materially affected the proceeding. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). But "mere inconsistencies" in the testimony will not suffice. *Id.* Monea must prove that the Government's testimony was "indisputably false." *See id.* at 823. And ordinarily, claims of perjury must also overcome a harmless-error analysis. *See Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir.

2009). But reaching that issue is often unnecessary because of the difficulty in proving that the Government's witness "testified in an indisputably false manner." *Id*. at 584.

Monea claims that Tanza lied on the stand when he explained why he structured the $100,000 payment into three separate wire transfers. Tanza testified that he simply did not have enough money to transfer the entire $100,000 in one lump sum. But Monea argues that this explanation was false because Nancy McCann, an acquaintance of Monea's, overheard Tanza tell a different story. She submitted an affidavit stating that Tanza admitted that he "deliberately" structured the transaction as three separate wires so that the Government could bring three charges against Monea. R. 377-14, McCann Dec. at ¶ 3, PageID 5169–70. This, Monea argues, contradicts Tanza's testimony during trial.

But as Monea himself notes, McCann's statement "is not necessarily inconsistent with Special Agent Tanza's trial testimony." Reply Br. at 15. Tanza never denied that he wanted to structure the transaction so that the Government could charge Monea with three separate counts—it does not appear that anyone ever asked him that question. And it is possible that Tanza both did not have the funds available *and* wanted to send three wires to stack three charges against Monea. So even if we find McCann's affidavit credible, it does not prove that Tanza's testimony was "indisputably false."

In response, Monea suggests that the mere possibility of an inconsistency in Tanza's testimony shifts the burden to the Government to prove that his statements were true. But that has the law exactly backwards. Not only are "mere inconsistencies" not enough to sustain a claim of perjury, but Monea bears the burden on this issue. *Lochmondy*, 890 F.2d at 822. The Government has no obligation to prove the truth of its own testimony if Monea cannot first make the case that it was "indisputably false." *Id*. Because he cannot do so, we affirm.

IV.

Finally, we deny Monea's request to remand the matter for an evidentiary hearing. A district court must grant a hearing to a petitioner "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C.§ 2255(b). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true

because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). As stated above, the evidence in the record "conclusively show[s]" that Monea is not entitled to relief, and an evidentiary hearing is therefore not necessary. 28 U.S.C. § 2255(b).

\* \* \*

We affirm.