RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DWIGHT BULLARD,

*Petitioner-Appellant*,

*v.*

No. 17-3731

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 1:14-cr-00411-1; 1:17-cv-00061—James S. Gwin, District Judge.

Argued: August 1, 2019

Decided and Filed: September 4, 2019

Before: GUY, THAPAR, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Samantha M. Goldstein, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant. Rebecca C. Lutzko, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Samantha M. Goldstein, O'MELVENY & MYERS LLP, Washington, D.C., Anton Metlitsky, O'MELVENY & MYERS LLP, New York, New York, for Appellant. Rebecca C. Lutzko, Danielle K. Angeli, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. Dwight Bullard, Lisbon, Ohio, pro se.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. Dwight Bullard pleaded guilty to distributing heroin and being a felon in possession of a firearm. At sentencing, the district court determined that Bullard

qualified as a career offender under the Sentencing Guidelines.  Bullard now challenges that determination, arguing that his Arizona conviction for attempting to sell drugs is not a "controlled substance offense."

Bullard has a bit of a point.  We recently explained, sitting en banc, that "[t]he Guidelines' definition of 'controlled substance offense' does not include attempt crimes." *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019) (en banc) (per curiam).  In other words, "attempt crimes no longer qualify as controlled substance offenses for purposes of the career offender enhancement."  *United States v. Garrett*, 772 F. App'x 311, 311 (6th Cir. 2019) (per curiam).  Indeed, the government admits that "under *Havis*, Bullard's attempted transport for sale of a narcotic drug conviction, under Arizona Revised Statute § 13-3408, would not constitute a predicate 'controlled substance offense.'"  So if Bullard received his sentence today, he would not be a career offender under the Guidelines.

But Bullard runs into a problem getting to the merits of his argument:  he is not on direct review.  Instead, Bullard filed a § 2255 habeas petition, arguing that the district court misclassified him as a career offender, which resulted in a higher recommended sentence.  This is not a cognizable claim on collateral review.  *See Snider v. United States*, 908 F.3d 183, 189–91 (6th Cir. 2018) ("[A] non-constitutional challenge to [an] advisory guidelines range suffers from a greater defect: it is not cognizable under § 2255.").  As a result, Bullard cannot challenge his classification as a career offender under the Guidelines—and *Havis* provides no relief on collateral review.

To get around this prohibition, Bullard also argues that he received ineffective assistance of counsel because his trial and appellate counsel failed to object to his status as a career offender.  While this claim is at least cognizable under § 2255, it fares no better.  Bullard cannot satisfy his heavy burden under *Strickland*.  As a result, we affirm the denial of Bullard's petition.

## I.

Back in 2014, Bullard was charged with trafficking heroin and for being a felon in possession of a firearm.  The charges followed a search of Bullard's apartment, where officers found fifty-two bags of heroin.  The officers seized more than 140 grams (or $20,000) worth of

heroin.  Bullard was also in possession of a .40 caliber Glock pistol.  Bullard moved to suppress the evidence from his apartment—arguing that the warrant was not supported by probable cause. The district court denied the motion to suppress, "rul[ing] that probable cause existed to support the issuance of the warrant, and indicated that the good-faith exception under *Leon* applied." *United States v. Bullard*, 659 F. App'x 288, 292 (6th Cir. 2016).  (*See also* Mot. Hr'g Tr., R. 62 at 67 (finding probable cause "more than sufficient" to support the warrant).)

Unable to keep the evidence out, Bullard entered a plea deal with the government.  The plea deal recognized that Bullard could face anywhere between ten years to life in prison.  But it omitted any agreement about the appropriate sentencing range under the Guidelines.  The plea deal did, however, recognize that Bullard "may be classified as a career offender based on his prior criminal record."  (Plea Deal, R. 40 at 5.)  Bullard had two prior convictions that could support a career-offender designation: a 2003 Arizona conviction for attempting to sell cocaine (under Ariz. Rev. Stat. § 13–3408), and a 2013 Ohio conviction for selling drugs (under Ohio Rev. Code § 2925.03(A)(2)).

At sentencing, the district court determined that Bullard qualified as a career offender. This set Bullard's recommended range at 292 to 365 months in prison.  (Sentencing Hr'g Tr., R. 65 at 3.)  Without the enhancement, Bullard's sentencing range would have been 92 to 115 months.  But these sentencing ranges under the Guidelines are, of course, just advisory.  And the district court ultimately varied downward, sentencing Bullard to 140 months in prison—i.e., "significantly below the guideline range."  (*Id.* at 16.)  In doing so, it recognized that although Bullard had a "long history of dealing drugs," he was still "kind of a low-level guy."  (*Id.* at 6.) The downward variance tracked Bullard's argument at sentencing:  while he agreed that the Arizona and Ohio convictions made him a career offender, he argued that he was not "an authentic career offender."  (*Id.* at 12.)  In other words, the district court believed Bullard that he was not as bad as your typical (and often violent) career criminal.

Bullard waived most his appellate rights—reserving the right to appeal just four issues. Among those four, only two applied:  the right to appeal "any determination by the Court that defendant qualifies as a Career Offender," and "the denial of [the] motion to suppress."  (Plea Deal, R. 40 at 7.)  On direct appeal, Bullard decided to appeal only the latter, and we affirmed.

Bullard then filed a § 2255 habeas petition—arguing that the district court misclassified him as a career offender under the Guidelines—and that he received ineffective assistance of counsel when his trial and appellate counsel failed to challenge this designation. Bullard provided two theories on why the Arizona conviction did not qualify as a "controlled substance offense." First, the Arizona statute criminalized drugs (benzylfentanyl and thenylfentanyl) that are not federally controlled. And second, the Arizona statute criminalized conduct (attempts to sell drugs) that falls outside the Guidelines' definition. *See* U.S.S.G. § 4B1.1. Simply put, Bullard argued that Arizona's statute is too broad to qualify. Bullard also challenged his Ohio conviction for selling drugs.

The district court denied the petition, explaining that the state convictions qualified as "controlled substance offenses." (Op. & Order, R. 76.) This also defeated Bullard's ineffective assistance claim: because the district court properly classified Bullard as a career offender, he could not show prejudice in his failure-to-object claim. We granted Bullard's application for a certificate of appealability, but only for his claims related to the Arizona conviction. We review the trial court's factual findings for clear error and its legal conclusions de novo. *Cradler v. United States*, 891 F.3d 659, 664 (6th Cir. 2018). And we examine de novo whether a prior conviction counts as a predicate offense under the Guidelines. *Havis*, 927 F.3d at 384.

## II.

Section 2255 does not provide relief for just any alleged error. Instead, we can grant habeas relief under § 2255 only in a narrow set of circumstances: "when a sentence 'was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such a sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]'" *Snider*, 908 F.3d at 189 (quoting 28 U.S.C. § 2255(a)). To start, Bullard brings no constitutional challenge. Nor does Bullard challenge the jurisdiction of the district court. And his sentence was below the maximum he faced—life in prison. *See* 28 U.S.C. § 841(b)(1)(B).

This leaves just the last option—a "collateral attack." When a § 2255 claim falls under this category, the claim is "generally cognizable only if [it] involved 'a fundamental defect

which inherently results in a complete miscarriage of justice.'" *Snider*, 908 F.3d at 189 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). To meet this demanding standard, a prisoner typically must "prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated." *Spencer v. United States,* 773 F.3d 1132, 1139 (11th Cir. 2014) (en banc); *accord Snider*, 908 F.3d at 190–91 (analyzing *United States v. Foote*, 784 F.3d 931, 940–43 (4th Cir. 2015)). But Bullard does not allege that he is actually innocent of his crimes. Nor does he claim that Arizona vacated his conviction for attempting to sell cocaine.

Rather, Bullard alleges that his career-offender designation is erroneous under the advisory Sentencing Guidelines. This is fatal to his claim. We recently rejected an almost identical § 2255 claim, where the defendant "allege[d] that an intervening change in the law rendered his career offender designation erroneous." *Snider*, 908 F.3d at 191. In doing so, we relied on the Fourth Circuit's decision in *Foote*, which explained why these "misapplication-of-the-guidelines-range" claims are not cognizable on collateral review. *See id.* (analyzing *Foote*, 784 F.3d at 940–43). The Fourth Circuit was skeptical that a "complete miscarriage of justice" could ever occur when a district court is simply exercising its discretion in sentencing under the now-advisory Guidelines. *Foote*, 784 F.3d at 940–42.

This makes sense. Misapplication-of-the-guidelines-range claims challenge the district court's choice between alternative sentences "under an *advisory* Guidelines scheme." *Id.* at 941 (emphasis original). Indeed, the Guidelines are just "meant to *guide* the district court to the proper sentence." *Id.* But the district court is free to vary from the Guidelines—and can impose a sentence at, below, or above the Guidelines. *See United States v. Booker,* 543 U.S. 220, 245 (2005). For example, if a defendant is a career offender and the Guidelines recommend a long sentence, the district court can nevertheless impose a much shorter sentence. That's exactly what happened to Bullard. But the opposite is also true. If a defendant does not have a career-offender designation and the Guidelines recommend a short sentence, the district court still has the discretion to impose a much longer sentence. *See Foote*, 784 F.3d at 942 (giving examples of upward variances supported by § 3553(a) factors). This discretion confirms the absence of any

"miscarriage of justice" in Guidelines calculations: a district court can lawfully impose the same sentence with or without the career offender designation.

We agreed with this reasoning in *Snider*, explaining that "[a]lthough the career designation may have affected the ultimate sentence imposed, 'it did not affect the lawfulness of the [sentence] itself—then or now.'" 908 F.3d at 191 (quoting *United States v. Addonizio*, 442 U.S. 178, 187 (1979) (brackets original)). Bullard asks us to distinguish *Snider* because the defendant's Guidelines range in *Snider*, unlike his own, "would have been the same absent the career-offender designation." (Appellee's Br. at 48–49 n.14.) But that is not entirely accurate. In *Snider*, "[w]ith the career offender designation, Snider's guidelines range was 360 months to life." 908 F.3d at 186. "However, without the career offender designation, . . . Snider's resulting advisory guidelines range was 262 to 327 months." *Id.* But the district court eventually sentenced Snider to just 300 months—i.e., within his lower non-career-offender range. Still, despite the below-Guidelines sentence, Snider filed a § 2255 challenging his career-offender designation.

In affirming the dismissal of his § 2255 petition, we noted the lack of prejudice in Snider's sentence: "Snider's 300-month sentence is within the middle of [the allegedly correct] range." *Id.* at 191 (quoting *Davis*, 417 U.S. at 346). So Snider could not possibly meet his demanding burden under § 2255 to show a "miscarriage of justice" because his sentence fell within the Guidelines range he wanted: 262 to 327 months. In other words, even if Snider was correct about his career-offender status, it didn't matter. To be sure, Snider's Guideline range would have been lower without the career-offender designation. But because the district court deviated from Snider's "360 months to life" career-offender range, he already received a sentence within his non-career-offender-Guidelines range.

Bullard argues that his sentence is different than *Snider*—and that this difference allows him to bring a § 2255 claim. While the district court sentenced Snider within his non-career-offender-Guidelines range (of 262 to 327 months), Bullard received a sentence higher than his non-career-offender-Guidelines range (of 92 to 115 months). So even though the district court gave Bullard a sentence substantially below his career-offender range (140 months instead of 292 to 365 months), it still did not deviate as low as the district court in *Snider*.

But this difference does not matter—and for good reason. As the Fourth Circuit explained in *Foote*, if an inmate's ability to challenge his Guidelines range under § 2255 depends on a comparison between the actual sentence and the allegedly correct Guidelines range, "it is hard to fathom what the dividing line would be between a fundamental defect and mere error." 784 F.3d at 943. This would leave courts "to guess about which types of guideline error could be corrected on collateral review." *Spencer*, 773 F.3d at 1140. For example, the career-offender designation in *Foote* "increased dramatically [the defendant's] advisory Guidelines range"— jumping from "151–188 to 262–327 months in prison." 784 F.3d at 933, 944. And the district court ultimately sentenced the defendant to 262 months, with no deviation from the career-offender range. *Id.* at 933. This resulted in almost a forty percent increase in the defendant's otherwise top-of-the-Guidelines sentence (without the career-offender designation). So while the defendant in *Snider* received a sentence "within-the-correct-Guidelines" range, so to speak, the defendant in *Foote* certainly did not. Still, neither court thought the sentence involved a miscarriage of justice.

Bullard finds himself somewhere in the middle. With the district court's downward variance, he received a sentence roughly twenty-two percent above his otherwise top-of-the-Guidelines sentence (without the career-offender designation). So while Bullard's sentence is higher than *Snider*, it is much lower than *Foote*. This comparative line-drawing exercise just highlights (all over again) the problem with these types of § 2255 claims: the district court's broad discretion in sentencing under the *advisory* Guidelines. Some sentences will be high, others will be low. *See United States v. Johnson*, No. 18-3720, 2019 WL 3788232, at *3 (6th Cir. Aug. 13, 2019) ("*Any* system of advisory guidelines will lead to all kinds of variations that affect individual criminal defendants, sometimes in their favor, sometimes not."). But in all these scenarios, the district court could, with its discretion, impose an identical sentence even without the career-offender designation, and the sentence could remain lawful. *See Foote*, 784 F.3d at 941 ("Thus, even if we vacate and remand at this juncture, the same sentence could be legally imposed."). And a lawful sentence does not create a miscarriage of justice. *Spencer*, 773 F.3d at 1138 (citing *United States v. Addonizio*, 442 U.S. 178, 186–87 (1979)).

So rather than speculate about when, if ever, an incorrect designation under the advisory Guidelines could create a "fundamental miscarriage of justice," the better practice is to broadly repeat what we said in *Snider*: "[a] misapplication-of-an-advisory-guidelines-range claim is . . . not cognizable under § 2255." 908 F.3d at 191. Indeed, every circuit to "look[ ] at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations." *Id.*; *see also, e.g.*, *Foote*, 784 F.3d at 932 (same); *Spencer*, 773 F.3d at 1135 (same); *Hawkins v. United States*, 706 F.3d 820, 824–25 (7th Cir. 2013) (same); *Sun Bear v. United States*, 644 F.3d 700, 704–06 (8th Cir. 2011) (en banc) (same); *United States v. Williamson*, 183 F.3d 458, 461–62 (5th Cir. 1999) (same). As a result, Bullard cannot use § 2255—or our decision in *Havis*—to attack collaterally his designation as career offender under the Sentencing Guidelines. Both are best left for direct review.

## III.

This leaves Bullard's claim for ineffective assistance of counsel, "which is cognizable under § 2255." *Snider*, 908 F.3d at 192. To succeed on this claim, Bullard "must establish two things." *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019). "First, that the attorney's performance fell below 'prevailing professional norms.'" *Id.* (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). "And second, that the attorney's poor performance prejudiced the defendant's case." *Id.* But we need not address both elements. Indeed, ineffectiveness claims are often disposed of for lack of sufficient prejudice because "[p]roving prejudice is not easy." *Id.* Defendants "face[ ] a 'high burden' in demonstrating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)).

Bullard argues that his attorneys made the same mistake twice. At sentencing, his attorney did not object when the district court labeled him a career offender. And then on direct appeal, his attorney did not challenge Bullard's career offender enhancement. In both instances, Bullard argues that his attorneys should have raised the same two arguments he now makes in his § 2255 petition about his Arizona conviction: the overbroad drugs and conduct.

We start with the easier claim first—the conduct. Bullard argues that his Arizona conviction is not a controlled substance offense because he was *attempting* to sell drugs. Following our decision in *Havis*, Bullard is correct. *See* 927 F.3d at 387 ("The text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substance offenses."). But looking back to when the district court sentenced Bullard and when he filed his direct appeal, as we must, our caselaw was different. *Snider*, 908 F.3d at 192 (quoting *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984) ("We assess counsel's performance based on 'counsel's perspective at the time' . . . rather than 'in the harsh light of hindsight[.]'")). At that time, our decision in *Evans* held the opposite: "offering to sell a controlled substance constitutes an attempt to distribute a controlled substance, and thus a conviction under the statute categorically qualifies as a controlled substance offense." *United States v. Evans*, 699 F.3d 858, 868 (6th Cir. 2012). And "[w]e have repeatedly held that counsel is not ineffective for failing to predict developments in the law." *Snider*, 908 F.3d at 192 (collecting cases).[1] As a result, Bullard's ineffectiveness claim on the conduct argument fails under the first prong: it was reasonable for his attorneys not to object.

Next, Bullard argues that the Arizona statute does not qualify as a controlled substance offense because Arizona criminalizes two drugs (benzylfentanyl and thenylfentanyl) that are not criminalized on the federal level. To explain why his attorneys should have made this argument, Bullard points to several cases from our sister circuits, which explain that "'controlled substance' refers exclusively to a substance controlled by the [federal government]." *United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018) (collecting cases from 2011–2015). In response, the government cites caselaw we developed after Bullard's direct appeal, which comes to the

---

[1]Bullard briefly argues that his Arizona drug conviction is not a controlled substance offense even under *Evans*. (Appellant's Br. at 41–43.) *Evans* found that the Ohio statute at issue required an "intent to sell a controlled substance," as opposed to a mere "intent to offer to sell." 699 F.3d at 867. In other words, the Ohio statute did not criminalize fraudulent offers to sell drugs—i.e., a scam, where the seller had no intention of actually distributing the drugs. *Id.* (distinguishing *United States v. Savage,* 542 F.3d 959, 965–66 (2d Cir. 2008) ("An offer to sell can be fraudulent, such as when one offers to sell the Brooklyn Bridge.")). Bullard argues that Arizona *does* criminalize such fraudulent offers—so the statute is too broad even under *Evans*. But Arizona courts have explained the opposite: the requirement that the defendant "knowingly" offer to sell drugs prevents Arizona from "punish[ing] persons whose 'offers' are 'fraudulent, insincere or made in jest.'" *State v. Strong*, 875 P.2d 166, 167 (Ariz. Ct. App. 1993); *see also State v. Alvarado*, 875 P.2d 198, 201 (Ariz. Ct. App. 1994) ("Appellant could not be convicted of offering to sell marijuana . . . if his only intention was to take [the] money and disappear."). With this backdrop, it was reasonable for Bullard's attorney not to object on this ground.

opposite conclusion: "there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government." *United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017).

To be sure, this is a harder question to answer (at least on the prejudice question), especially because there is some pre-2015 caselaw (though non-binding caselaw) to support part of Bullard's argument. *See, e.g.*, *United States v. Gomez-Alvarez*, 781 F.3d 787 (5th Cir. 2015); *United States v. Leal-Vega*, 680 F.3d 1160 (9th Cir. 2012); *United States v. Sanchez-Garcia*, 642 F.3d 658 (8th Cir. 2011). But on collateral review, Bullard's argument is not as straightforward as he would like. It does not matter only whether Bullard's argument could have been a winner. Instead, Bullard must satisfy a demanding standard: he must show that "the likelihood of a different result [was] substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (citation omitted).

Here, Bullard arguably cannot show the latter, much less the former. Indeed, at the time of Bullard's sentence and direct appeal, we had yet to address whether a "controlled substance offense" can include substances that are not criminalized under federal law. Since then, we remain conflicted whether such statutes qualify. *Compare Smith*, 681 F. App'x at 489, *with United States v. Pittman,* 736 F. App'x 551, 554 (6th Cir. 2018). And "[w]e have not yet taken up this question in a published opinion." *United States v. Solomon*, 763 F. App'x 442, 447 (6th Cir. 2019) (recognizing disagreement between *Smith* and *Pittman* but refusing to resolve it because the Ohio statute at issue was divisible as to drug type). Nor has the Supreme Court addressed this question.

Take also the Second Circuit's decision in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018). Bullard cites *Townsend* to suggest that the "great weight" of authority supports his position. (Appellant's Br. at 25.) But as *Townsend* explains, before it resolved the overbroad-drug question (recently in 2018), several district courts within the Second Circuit concluded that a "conviction for an offense involving a substance controlled only under state law would qualify" as a controlled substance offense. 897 F.3d at 70 (citing *United States v. Laboy*, No. 16-cr-669, 2017 WL 6547903, at *3 (S.D.N.Y. Dec. 20, 2017) ("Absent the importation of the word 'federal' into the Guidelines definition at issue here, there is no reason to believe that offenses

under state law would be limited to those drugs regulated by federal law.")).  Said another way, the law did not plainly support Bullard's position.

Remember also, Bullard pleaded guilty to trafficking cocaine—a federally controlled substance.  So if the Arizona statute is divisible by drug type, he remains a career offender (making any objection futile).  This fact alone could explain why Bullard's counsel did not object to the enhancement.  Bullard relies on pre-2015 caselaw that unanimously affirmed career-criminal enhancements because the defendants in each case sold drugs criminalized at both state and federal levels.  *Gomez-Alvarez*, 781 F.3d at 796 (enhancement still applied because the conviction was for heroin); *Sanchez-Garcia*, 642 F.3d at 662 (enhancement still applied because the conviction was for meth); *Leal-Vega*, 680 F.3d at 1169 (enhancement still applied because the conviction was for tar heroin).  And as the government explains, there is significant support that the Arizona statute is likewise divisible.  (*See* Appellee's Br. at 29–33 (citing *State v. Wright*, 239 P.3d 1122, 1122–23 (Ariz. Ct. App. 2016) (upholding two counts of possession of a narcotic drug arising out of a single incident because the officers found two different drug types:  crack cocaine and heroin)).)  *See also United States v. Esquival-Centeno*, 632 F. App'x 233, 234 (5th Cir. 2016) (per curiam) (affirming enhancement when the defendant's "conviction was for the specific offense of attempted transport of cocaine").  Put differently, it is not substantially likely, had Bullard's attorney objected to the Arizona statute using the overbroad-drug argument, that the district court would have dropped his enhancement as a career offender.

In sum, it is enough to say that this is a tough question.  Indeed, our circuit has yet to publish a decision to resolve our intra-circuit disagreement.  *Solomon*, 763 F. App'x at 447.  So while we *might* agree with Bullard's argument—and while the district court *might* have decided to drop the enhancement had Bullard objected—that is not enough on collateral review.

In addition, with such uncertainty in the caselaw, it was reasonable for his trial counsel not to object on this ground.  And to be sure, Bullard's trial counsel was not silent about his career offender status at sentencing.  Instead, he argued that Bullard was not "an authentic career offender" (Sentencing Tr., R. 65 at 12–13), which yielded positive results:  the district court gave Bullard a sentence 152-months below the Guidelines, commenting that Bullard was "kind of a

low-level guy" who did not have "the typical background of people who qualify [as] a career offender[.]" (*Id.* at 6, 9–10, 16–17.) In other words, Bullard's trial counsel was successful at sentencing—cutting his client's sentence by more than fifty percent. This was not ineffective assistance of counsel.

To show ineffective assistance of counsel on his direct appeal, Bullard faces an even higher hurdle: plain error review. *See United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998) (applying plain error when defendant fails to object at sentencing). As we explained, "a lack of binding case law that answers the question presented will also preclude our finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 795 (6th Cir. 2015). So without binding precedent for his appeal (to overcome plain error review), Bullard cannot show that his appellate counsel performed deficiently, or that he suffered prejudice, when his appellate counsel failed to appeal his career offender enhancement. Thus, Bullard's ineffectiveness claim on the drug-mismatch argument fails under both prongs of *Strickland*.

\* \* \*

We affirm the district court.