NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0222n.06

No. 20-1348

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>CHRISTOPHER LEE PILLOW,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>   Petitioner-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>DEWAYNE BURTON, Warden,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>   Respondent-Appellee.</td><td>)</td></tr>
</table>

**FILED**
Apr 23, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: GUY, DONALD, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. After a murder conviction, Christopher Lee Pillow sought collateral relief from his criminal judgment in Michigan state court. The state trial court denied relief in 2008. But Pillow alleges that the court accidentally served a codefendant's counsel and that he did not learn of this denial until 2017. The state agreed that Pillow likely lacked the proper notice and consented to Pillow's motion asking the state trial court to reissue the denial and allow him to take a long-overdue appeal. Nearly three years have passed since this unopposed motion, but the state court has yet to act on it. So Pillow sought relief through a federal habeas petition. But the district court dismissed the petition on its own initiative without requiring the state to respond. Because it does not "plainly appear" to us that this immediate dismissal was the proper course under the circumstances, we reverse and remand for further proceedings. *See* Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

1

I

Pillow pleaded guilty to second-degree murder in Michigan state court. In January 2006, he was sentenced to 25 to 50 years' imprisonment. Pillow did not immediately appeal. In January 2007, however, he filed a delayed application for leave to appeal with an appellate court. The appellate court denied his application the next month. *See People v. Pillow*, No. 275450 (Mich. Ct. App. Feb. 14, 2007). Pillow failed to file a discretionary appeal with the Michigan Supreme Court. Instead, he filed a *pro se* motion for relief from judgment back in the state trial court in August 2007. The state trial court's docket suggests that it denied this motion on January 18, 2008. Pillow again failed to appeal.

But Pillow now claims that he had a good excuse: He allegedly was not served with the 2008 order denying his motion. And he did not learn of the denial until 2017 during a chance encounter with a codefendant. Until then, Pillow claims, he thought that his *pro se* motion remained pending. After obtaining counsel in June 2018, Pillow moved the trial court to reissue its order and opinion denying his motion for relief from judgment so that he could at last appeal the denial in state court.

That same month, the state responded to Pillow's motion by agreeing with it. According to the state's response, the trial court's files contained an order denying Pillow's motion for relief from judgment that listed a date (October 30, 2008) different from the date on the docket (January 18, 2008). An accompanying opinion listed both dates. The response also explained that, on July 14, 2009, the state judge previously assigned to the case had sent a letter notifying counsel named Ronald Ambrose of the denial. Yet Ambrose had been the appellate counsel for Pillow's codefendant, not for Pillow. Pillow had acted without counsel when he moved for relief from judgment in the trial court. Conceding that the record appeared to show that the trial court never

served Pillow with the order and opinion denying his motion for relief from judgment, the state interpreted state law to require the trial court to reissue the filings. *Graves v. Ct. of Appeals*, 425 N.W.2d 692, 692 (Mich. 1988) (order).

Almost three years have come and gone since these state-court filings. To this date, however, the state trial court does not appear to have acted on Pillow's unopposed request that it reissue the opinion and order denying his motion for relief from judgment.

In August 2019, about a year after Pillow submitted his unopposed motion in state court, he filed a habeas petition in federal court under 28 U.S.C. § 2254. Pillow alleged four claims: (1) that his guilty plea was invalid because he never stated that he was guilty on the record; (2) that his guilty plea was invalid because he did not know that he was waiving his right to appeal; (3) that his trial counsel provided ineffective assistance by failing to interview witnesses; and (4) that his appellate counsel was ineffective by failing to raise these issues.

District Judge Sean Cox was assigned Pillow's petition. Pillow moved to recuse Judge Cox under 28 U.S.C. § 455 because the judge's brother, Michael Cox, had been the Michigan Attorney General during the time of Pillow's criminal proceedings. Judge Cox denied the motion because there was no indication that then-Attorney General Cox had any personal role in Pillow's case. (Pillow sought a writ of mandamus from this court seeking the recusal, but we denied the writ because he had an adequate remedy at law to raise the issue (a direct appeal). *See In re Pillow*, No. 20-1142 (6th Cir. July 22, 2020).)

Before Pillow's federal habeas petition had been served on the state warden, the district court issued a show-cause order asking Pillow why it should not immediately dismiss his petition as untimely due to the one-year statute of limitations in 28 U.S.C. § 2244(d)(1). *See Day v. McDonough*, 547 U.S. 198, 209–10 (2006). Pillow responded that only a few months had actually

run on this statute of limitations. The limitations period had started when his judgment became final but stopped when Pillow filed for relief from the judgment in August 2007. Pillow next noted that the filing of this motion had tolled the statute of limitations under § 2244(d)(2). And because Pillow had lacked notice of the state trial court's denial of this motion, he argued, his state postconviction proceedings remained pending and the one-year time limit had yet to run.

Given this argument, the district court opted to dismiss Pillow's habeas petition *without prejudice* before requiring a response from the warden. *See Pillow v. Burton*, 2020 WL 978271, at *3 (E.D. Mich. Feb. 28, 2020). The district court reasoned that it was "imprudent" to resolve any issues in Pillow's federal case until the state trial court ruled on his pending motion to reissue the order and opinion denying relief from the judgment. *Id.* at *2. On the one hand, if the state trial court *granted* the motion, Pillow might be able to appeal the denial of his motion in the state courts and return to federal court after exhausting any and all state proceedings. *Id.* On the other hand, if the state trial court *denied* the motion, Pillow would face the same potential statute-of-limitations and exhaustion obstacles in federal court that he faces now. The delay would not prejudice Pillow by adding any more obstacles to federal review on top of those that already exist. *Id.* at *3.

We granted Pillow a certificate of appealability to consider a single question: "whether the district court properly dismissed without prejudice Pillow's habeas petition." *Pillow v. Burton*, No. 20-1348, slip op. at 3 (6th Cir. Aug. 5, 2020).

II

When a federal court receives a petition for a writ of habeas corpus from a state prisoner, the court generally must request a response from the state respondent. *See* 28 U.S.C. § 2243. The court need not do so, however, when "it appears from the application that the applicant or person

4

detained is not entitled" to relief. *Id.* Under § 2243, a federal court may immediately dismiss a petition if it concludes that "the petition is frivolous, or obviously lacking in merit" on its face. *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970). The habeas rules have since codified this judicial duty to "screen out" meritless petitions. *Id.*; Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"). Habeas Rule 4 says: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." *Id.*

Under Habeas Rule 4, a court should dismiss a federal habeas petition when it raises "legally frivolous claims" or "factual allegations that are palpably incredible or false." *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999); *see also, e.g.*, *Wingfield v. Sec'y, Dep't of Corrs.*, 203 F. App'x 276, 277–78 (11th Cir. 2006) (per curiam); *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). But a court should request a response from the state respondent if the petitioner's arguments are debatable rather than "clearly unreasonable." *See DiCenzi v. Rose*, 452 F.3d 465, 471–72 (6th Cir. 2006) (quoting *Wims v. United States*, 225 F.3d 186, 191 (2d Cir. 2000)).

The district court in this case dismissed Pillow's petition without prejudice under Habeas Rule 4. To do so, it relied on Pillow's pending state-court motion asking the trial court to reissue its order denying him relief from the criminal judgment. But given the "complex" procedural questions that Pillow has raised, this case "was an inappropriate candidate for summary dismissal under Rule 4, without full briefing by the parties and without the benefit of the entire state court record." *English v. Berghuis*, 529 F. App'x 734, 745 (6th Cir. 2013). That is true, whether we consider this issue from a statute-of-limitations perspective or from an exhaustion perspective.

Start with the statute of limitations. Pillow argues that his petition is timely under 28 U.S.C. § 2244(d). This provision establishes a one-year statute of limitations for habeas petitions, one

that typically begins on the date that a petitioner's underlying criminal judgment becomes final. *Id.* § 2244(d)(1)(A). But the statute delays this start date if state action created an unconstitutional "impediment" that prevented a petitioner from filing the petition. *Id.* § 2244(d)(1)(B). The statute also tolls the one-year period for any time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" *Id.* § 2244(d)(2). And courts may "equitably" toll the limitations period in extraordinary circumstances. *See Holland v. Florida*, 560 U.S. 631, 649 (2010).

Pillow argues that he timely filed his petition under these rules. As even the government conceded in state court, the state trial court does not appear to have served Pillow with its order denying him relief from the judgment. Pillow claims that this lack of notice qualified as a state "impediment" to his filing a petition under § 2244(d)(1)(B). *Cf. Funk v. Thaler*, 390 F. App'x 409, 411 (5th Cir. 2010). He also claims that his state collateral motion remained "pending" under § 2244(d)(2) until he "received notice" of the order denying relief. *See Crangle v. Kelley*, 838 F.3d 673, 680 (6th Cir. 2016) (dicta); *but cf. Donovan v. Maine*, 276 F.3d 87, 92 (1st Cir. 2002) (citing cases). And he claims that this state collateral motion remains "pending" today under § 2244(d)(2) because the state-law protocol for lack of notice involves reissuing the relevant state opinion to allow for a belated appeal. *See Graves*, 425 N.W.2d at 692; *cf. Carey v. Saffold*, 536 U.S. 214, 219–20 (2002). Lastly, Pillow claims that we should equitably toll the limitations period during the many years that he did not know of the denial of relief. *See Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002); *see also Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008) (citing cases). These statute-of-limitations arguments are not so "plainly" meritless that a court need not consider a state response, the state record, or any other evidence. *See* Habeas Rule 4; *see also Bryant v. Ford*, 967 F.3d 1272, 1273 (11th Cir. 2020); *Nassiri v. Mackie*, 967 F.3d 544, 549–50 (6th Cir.

2020); *cf. Shelton v. United States*, 800 F.3d 292, 294–95 (6th Cir. 2015). The district court itself agreed, recognizing that under at least some of Pillow's arguments, his "petition may no longer be untimely." *Pillow*, 2020 WL 978271, at *3.

Turn to exhaustion. Pillow argues that we should excuse his purported failure to exhaust his claims in state court. Federal courts generally cannot grant habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). But courts may grant that relief despite the failure to exhaust if there are "circumstances . . . that render [the state court] process ineffective to protect the rights of the [petitioner]." *Phillips v. White*, 851 F.3d 567, 576 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(b)(1)(B)(ii)).

Pillow claims that he fits within this exception to the exhaustion requirement. He notes that we have repeatedly held that a state court's "[i]nordinate delay in adjudicating state court claims" can make the state process ineffective. *Id.* (quoting *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992)); *see Turner v. Bagley*, 401 F.3d 718, 724–26 (6th Cir. 2005). We, for example, have rejected an exhaustion defense when a federal petitioner's state "petition for post-conviction relief ha[d] languished in state court for more than three years." *Workman*, 957 F.2d at 1344. And here, Pillow's motion for the state trial court to reissue its order denying relief from judgment has been pending—unopposed—for nearly three years. Pillow's reliance on this caselaw is again not so "plainly" wrong that we can reject it out of hand. *See* Habeas Rule 4. This debatable exhaustion point also shows why it was not necessarily prudent (or at least not "plainly" so) for the district court to require Pillow to wait for the state proceedings to unfold.

To reiterate: We do not rule on the merits of any issue. We hold only that Pillow's arguments are sufficiently weighty to warrant a response from the state. The district court thus should not have dismissed his petition under Habeas Rule 4. *See English*, 529 F. App'x at 745.

7

III

Pillow also renews his argument that the district judge should have recused himself. For two reasons, though, we opt not to answer this question at this stage.

*First*, it is not clear that the question is even properly before us. Habeas petitioners do not have an automatic right to appeal from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). They must first obtain a "certificate of appealability" from a judge. *Id.* § 2253(c)(1); *see Monea v. United States*, 914 F.3d 414, 420 (6th Cir. 2019). And the statute generally limits our review to the issues identified in the certificate of appealability. 28 U.S.C. § 2253(c)(3); *see, e.g.*, *Schreane v. Ebbert*, 864 F.3d 446, 454 (6th Cir. 2017); *Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001). We and other courts have also denied certificates of appealability for a district court's recusal decision. *See Nelson v. Brown*, 2020 WL 5034316, at *3 (6th Cir. June 16, 2020) (order); *see also, e.g.*, *United States v. Reynoso-Gonzalez*, 5 F. App'x 662, 664 (9th Cir. 2001) (mem.). In this case, moreover, we granted a certificate of appealability to address only the propriety of the district court's dismissal. Pillow did not request, and we did not grant, a certificate of appealability on this recusal question (even though our earlier denial of mandamus relief identified the appeal route as the proper way for him to raise it).

That said, although we have some stray language to the contrary, *cf. Monea*, 914 F.3d at 420, the Supreme Court has held that § 2253(c)(3) does not deprive us of subject-matter jurisdiction to consider issues that fall outside the certificate of appealability that we granted. *See Gonzalez v. Thaler*, 565 U.S. 134, 140–48 (2012). And while the statute imposes a "mandatory" rule that generally requires appellate courts to stick to the issues in the certificate when the opposing party objects, *see id.* at 146, there is now no opposing party in this appeal. Furthermore,

8

despite our unpublished orders, some courts have indicated that a habeas petitioner does not need a certificate of appealability to raise recusal questions on appeal. *See, e.g.*, *United States v. McIntosh*, 723 F. App'x 613, 616 (10th Cir. 2018) (relying on *Harbison v. Bell*, 556 U.S. 180, 183 (2009)); *Trevino v. Johnson*, 168 F.3d 173, 176–78 (5th Cir. 1999). Because this certificate-of-appealability issue has not been briefed, we are reluctant to resolve it.

*Second*, this appeal's procedural posture—without the state-court record or an adversarial presentation—also makes it ill-suited to resolve the legal questions that Pillow presents. The district judge found that his "impartiality" could not "reasonably be questioned" under the catchall recusal provision because Pillow identified no facts to suggest that then-Attorney General Cox had personal involvement in his state criminal case. 28 U.S.C. § 455(a). Pillow now argues that the judge overlooked his other grounds for recusal, including the bright-line rule from § 455(b)(5)(ii). That provision mandates recusal when "a person within the third degree of relationship to" the judge (such as a brother) "[i]s acting as a lawyer in the proceeding[.]" *Id.* Pillow claims that the Michigan Attorney General acted as an attorney in his criminal case because the Attorney General "is obligated to 'supervise the work of . . . prosecuting attorneys'" under state law. *Platinum Sports Ltd. v. Snyder*, 715 F.3d 615, 619 (6th Cir. 2013) (quoting Mich. Comp. Laws § 14.30).

Yet, without the relevant pleadings from state court, the record in this case does not identify the individuals involved in Pillow's criminal proceedings. It is also not clear to us that a family member "acts as a lawyer" in a case simply because the family member has (potentially uninvoked) supervising authority over the lawyers who do. *Cf. United States ex rel. Weinberger v. Equifax*, 557 F.2d 456, 463 (5th Cir. 1977). And it is not clear to us that the state criminal litigation should qualify as the same "proceeding" as this federal civil suit. *Compare In re Hatcher*, 150 F.3d 631, 636–37 (7th Cir. 1998), *with In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1146–47 (6th Cir. 1990)

9

(en banc) (Kennedy, J., concurring for a majority of the court). (The statute defines "proceeding" to "include[] pretrial, trial, appellate review, or other stages of litigation." 28 U.S.C. § 455(d)(1).)

For these reasons, we opt not to resolve this recusal question at this time. Pillow has not identified any sort of "irreparable harm" from a delayed answer. *Mischler v. Bevin*, 887 F.3d 271, 271–72 (6th Cir. 2018) (per curiam). And he remains free to seek a certificate of appealability on the recusal question (or to present arguments why he need not do so) down the road.

\* \* \*

We reverse the district court's decision dismissing Pillow's habeas petition and remand for further proceedings consistent with this opinion.